**In the Matter of William G. HARHUT, Jr.**

**No. C6–85–1432.**

Court of Appeals of Minnesota.

Oct. 8, 1985.

Certification Approved and Review Granted Nov. 6, 1985.

See also, 367 N.W.2d 628.

Stephen D. Radtke, Bloomington, for appellant Harhut.

Thomas L. Johnson, Hennepin Co. Atty., John R. Owen, Asst. Co. Atty., Minneapolis, for respondent Hennepin County.

Hubert H. Humphrey, III, Atty. Gen., Mary L. Stanislav, Special Asst. Atty. Gen., St. Paul, for intervenor.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant Harhut was committed to Faribault State Hospital as a mentally retarded person in November 1984. At his six-month review hearing, he challenged the constitutionality of Minn.Stat. § 253B.13, subd. 2, requiring commitment of mentally retarded persons for an indeterminate period without annual reviews. The trial court found the statute constitutional, and ordered appellant committed for an indeterminate period. This appeal followed. The attorney general intervened on the constitutional issue. We affirm and certify.

## FACTS

William Harhut, a blind, mentally retarded patient at Faribault State Hospital, requires 24 hour supervision and is awaiting community placement. Following an initial six-month commitment, treatment reports were filed on April 19 and May 23, 1985. The April report was signed by the medical director and the May report was signed by the assistant medical director. The trial court found (1) Harhut continues to be mentally retarded, (2) Harhut requires involuntary commitment for his own protection, (3) Harhut is unable to care for himself, and (4) Faribault is the least restrictive available alternative because suitable community facilities have long waiting lists.

## ISSUES

1. Was denial of appellant's motion to dismiss improper because a sufficient six-month treatment report had not been filed?

2. Is Minn.Stat. § 253B.13, subd. 2 (1984), which provides for an indeterminate commitment of mentally retarded patients without annual court review unconstitutional?

## ANALYSIS

1. Mentally retarded "persons" are initially committed for no more than six months. Minn.Stat. § 253B.09, subd. 5 (1984). The patient's need for continued commitment is then reviewed. *Id.* § 253B.12, subd. 4. Before that hearing, the head of the facility is required to file a written report with the committing court, providing a copy to the patient and his counsel, setting forth in detailed narrative form the patient's diagnosis, anticipated discharge date and treatment plan, description of the discharge planning process, a statement of the patient's need for further care and treatment, a description of whether treatment must be provided in a treatment facility, whether commitment remains necessary, and whether the statutory requisites for commitment are met. *Id.* subd. 1. If a written report is not timely filed, or the report "describes the patient as not in need of further institutional care and treatment, the proceedings shall be terminated by the committing court, and the patient shall be discharged from the treatment facility." *Id.* subd. 2.

■ Appellant argues the reports, signed by the hospital medical director and assistant medical director, are legally insufficient because they were not signed by the head of the treatment facility. Appellant ignores the statutory definition of "head of the treatment facility." The term means "the person who is charged with overall responsibility for the professional program of care and treatment of the facility *or his designee.*" *Id.* § 253B.02, subd. 8 (emphasis added). Appellant makes no argument whether the medical director and assistant are designees. The staff psychologist testified the medical director is under the chief executive officer. We conclude reports were filed by designees of the head of the treatment facility.

■ 2. Appellant also argues the reports failed to contain the detailed information required by statute. The May 22 report detailed the testing performed in 1983 and 1980 which supported the diagnosis of mental retardation. The court was informed Harhut is waiting for a vacancy in an appropriate community facility. Both reports detailed Harhut's treatment and programming and concluded Harhut re-

quires further care and treatment at the hospital. The reports satisfy the statutory requirements and the trial court properly denied appellant's motion to dismiss.

3. Appellant challenges the constitutionality of indeterminate commitment of mentally retarded patients. Mentally ill and chemically dependent persons may not be committed for more than one year without the filing of a new petition for commitment. *Id.* § 253B.13, subds. 1, 3. Mentally retarded patients "shall" be committed for an indeterminate period of time. *Id.* subd. 2. The patient's physical and mental condition must be assessed at least annually. *Id.* § 253B.03, subd. 5. The program plan, devised to overcome behavioral problems and eventually make institutionalization unnecessary, must be reviewed at least quarterly. *Id.* subd. 7. Neither review process is automatically monitored by the committing court, although patients (except those committed as mentally ill and dangerous) may always petition the court for determination of their need for continued institutionalization, whether they remain mentally ill, mentally retarded, or chemically dependent "or for any other relief as the court deems just and equitable." *Id.* § 253B.17, subd. 1.

Appellant argues the disparate commitment of mentally retarded patients is in violation of equal protection. The trial court found there was a rational basis for distinguishing between the mentally ill and chemically dependent, who recover with treatment, and the mentally retarded, who do not. Additionally, the trial court found Minn.Stat. § 253B.17 provides sufficient protection for the patient, by permitting them to seek judicial review at any time.

> [L]egislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.

*City of Cleburne, Texas v. Cleburne Living Center,* — U.S. —, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

Respondents argue mentally retarded patients are distinguishable from mentally ill and chemically dependent patients. The diagnosis of mental retardation is generally permanent, although advances in evaluation and treatment may affect earlier diagnoses. By contrast, treatment and medication generally are effective in controlling mental illness and chemical dependency. The attorney general cited statistics indicating mentally retarded patients remain in state hospitals longer than other patients.

The critical issue for this court to determine is whether disparate treatment of mentally retarded patients is rationally related to a legitimate governmental purpose. The State of Minnesota has an interest in assisting the retarded to realize their full potential. It is also obligated to provide treatment intended to render further institutionalization unnecessary. Minn.Stat. § 253B.03, subd. 7. Numerous programs, such as waivered services and case management services, are calculated to meet these goals. There is no indication that automatic annual reviews of commitment, or a one-year limitation on commitments, would better serve the goal of deinstitutionalization than the programs now in place.

Appellant relies on a Wisconsin decision finding unconstitutional a statute permitting indeterminate commitment of "protectively placed individuals." *State ex rel. Watts v. Combined Community Services Board,* 122 Wis.2d 65, 362 N.W.2d 104 (1985). There, since similarly situated patients were treated dissimilarly and the disparate treatment served no legitimate governmental purpose, the protective placement statute was held unconstitutional.

The Minnesota Attorney General argues the rights of mentally retarded patients are protected and they receive (often lengthy) training required to prepare them for life beyond the state hospital. In addition to the procedural safeguards, the attorney general cited the *Welsch* decree obligating this state to reduce hospital populations. *See Welsch v. Likins,* 550 F.2d 1122 (8th Cir.1977).

We conclude the indeterminate commitment of mentally retarded patients, cou-

pled with extensive state efforts at deinstitutionalization, is rationally related to the legitimate purpose of training, treating, and caring for retarded persons.

## DECISION

The reports filed by the medical director and assistant director complied with Minn. Stat. § 253B.12. Minn.Stat. § 253B.13, subd. 2 does not deny equal protection since the indeterminate commitment of mentally retarded patients is rationally related to the legitimate state interests of caring for and deinstitutionalizing these patients. However, the constitutional issue raised by appellant is so important we request the supreme court to consider it. Accordingly, we certify this appeal to the Minnesota Supreme Court pursuant to Minn.Stat. § 480A.10 (1984) and Minn.R. Civ.App.P. 118.

Affirmed and certified.