**In the Matter of John DESMOND.**

**No. C3–85–2215.**

Court of Appeals of Minnesota.

Feb. 4, 1986.

Patrick W. Kelly, Minneapolis, for appellant Desmond.

Thomas L. Johnson, Hennepin Co. Atty., John R. Owen, Asst. Co. Atty., Minneapolis, for respondent Hennepin County.

Hubert H. Humphrey, III, Atty. Gen., Mary L. Stanislav, Julie K. Harris, Sp. Asst. Attys. Gen., St. Paul, for intervenor.

Heard, considered and decided by WOZNIAK, P.J. and SEDGWICK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Appellant was committed to Faribault State Hospital as a mentally retarded person in April, 1985. A review hearing was held on October 31, 1985. Counsel for appellant sought a specific period for continued commitment, arguing indeterminate commitment is unconstitutional. In the alternative, appellant sought appointment of a guardian ad litem. The motions were denied on November 19 and commitment for an indeterminate period was ordered on November 20. Appellant seeks review of both orders, and the attorney general intervened to defend the constitutionality of Minn.Stat. § 253B.13, subd. 2 (1984). We affirm the trial court and certify this case to the supreme court.

## FACTS

Appellant is a 42 year old profoundly retarded man. He has been a ward of the State since 1984. Desmond does not speak and has epilepsy. Medical records indicate that he is aggressive towards staff and other residents and frequently engages in behavior injurious to himself. He requires constant supervision, but can feed himself and wash his hands with prompting.

At the time of Desmond's six-month review hearing, *see* Minn.Stat. § 253B.12, counsel moved for a finding that Minn.Stat. § 253B.13, subd. 2, requiring indeterminate commitment of mentally retarded persons, is unconstitutional. Counsel asked the trial court to specify a limited term for continued commitment or to appoint a guardian ad litem to monitor Desmond's condition if he was committed indeterminately. The motions were denied and indeterminate commitment was ordered.

## ISSUES

1. Does indeterminate commitment of a mentally retarded patient violate constitutional guarantees of equal protection?

2. Does indeterminate commitment of a mentally retarded patient violate constitutional guarantees of due process?

3. Did the trial court err by denying appellant's motion for appointment of a guardian ad litem?

## ANALYSIS

### I.

Appellant argues the indeterminate commitment of mentally retarded patients pursuant to Minn.Stat. § 253B.13, subd. 2 deprives him of equal protection, since chemically dependent and mentally ill patients may not be committed for more than one year without the filing of a new petition for commitment. Minn.Stat. § 253B.13, subds. 1 and 3. We recently considered this argument and concluded indeterminate commit-

ment is constitutional, since the disparate treatment is rationally related to legitimate government purposes. *In re Harhut,* 374 N.W.2d 798, 800–01 (Minn.Ct.App.1985). *Harhut* was certified to our supreme court and briefs have been filed. In light of our recent decision and the pendency of the supreme court's decision on this issue, we decline to address appellant's equal protection claim at this time.

## II.

Appellant next argues due process requires annual judicial reviews of his commitment. In evaluating a procedural due process claim, this court must weigh the private interest affected, the likelihood of erroneous deprivation of liberty with the present system and the value of additional procedures in reducing that likelihood, and the State's interest, including the potential burden of additional procedures. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

There is no question that appellant and other patients have "a substantial liberty interest in not being confined unnecessarily[.]" *Parham v. J.R.,* 442 U.S. 584, 600, 99 S.Ct. 2493, 2503, 61 L.Ed.2d 101 (1979). Numerous administrative and statutory safeguards already in effect in Minnesota protect mentally retarded patients at the state hospitals from unnecessarily prolonged institutionalization.

■ As conceded by appellant, the initial commitment process for retarded persons is identical to that for chemically dependent and mentally ill proposed patients. *See* Minn.Stat. § 253B.07–.09. The initial commitment period for all three groups is six months. Minn.Stat. § 253B.09, subd. 5. A treatment report must be submitted to the committing court during the initial commitment period. Minn.Stat. § 253B.12, subd. 1. A review hearing before the committing court and written findings of fact and conclusions of law are required for continued commitment. *Id.,* subds. 4 and 7. Until the time continued commitment is ordered, the treatment of these three classes of patients is identical.

After continued commitment is ordered, the physical and mental condition of the mentally retarded patient must be reviewed at least annually. Minn.Stat. § 253B.03, subd. 5. The patient has a right to treatment and a written program plan, which must be reviewed at least quarterly. *Id.* subd. 7. All patients continue to be represented by counsel after commitment. *Id.,* subd. 9; *In re Hefler,* 378 N.W.2d 808 (Minn.Ct.App.1985). Counsel must monitor reports concerning the patient and take action accordingly. Minn.R.Civ. Commitment 3, comment A(7). The patient may, at any time, petition the committing court for review of his need for continued institutionalization or for other relief. Minn.Stat. § 253B.17, subd. 1. The committing county must provide case management services to the patient, including screening for waivered services. Minn.R. 9525.0060 (1983).

The trial court concluded these procedures were adequate to protect appellant's right and we agree. Appellant failed to establish that current procedural safeguards pose a substantial risk of unnecessary continued commitment of mentally retarded patients. Additionally, there is no indication that requiring annual adversary hearings before the committing court will reduce the risk that retarded patients will be committed to the state hospital longer than needed. In fact, "[c]ommon human experience and scholarly opinions suggest that the supposed protections of an adversary proceeding to determine the appropriateness of medical decisions for the commitment and treatment of mental and emotional illness may well be more illusory than real[.]" *Parham v. J.R.,* 442 U.S. at 609, 99 S.Ct. at 2508. There is little reason to suppose adversary hearings would be any more effective in determining the appropriateness of continued commitment for mentally retarded patients. We affirm the trial court's conclusion that the present statutory scheme does not violate appellant's constitutional right to due process.

## III.

■ Appellant asserts the trial court's refusal to appoint a guardian ad litem to

monitor his needs and condition violated his right to due process. The trial court noted counsel's continuing representation of appellant and the availability of the petition for judicial review. *See* Minn.Stat. § 253B.17.

Counsel for Desmond argues a guardian ad litem would afford individual attention to the patient and could evaluate the best interests of the patient in determining whether to petition for judicial review. Counsel envisions a guardian ad litem "reporting" to counsel for the retarded patient, but does not explain why the annual reviews and quarterly program reviews, already required by statute, provide insufficient information for counsel to determine whether to petition for judicial review.

In a similar context, we recently affirmed a trial court's refusal to appoint a guardian ad litem for a retarded patient. *In re Frederickson,* 376 N.W.2d 736, 738 (Minn.Ct.App.1985). Counsel in this case also failed to establish the absence of a guardian ad litem in any way results in a risk to Desmond of erroneous continued confinement or that appointment of a guardian would reduce this speculative risk.

Psychologist Richard Amado testified individual guardians would be helpful to patients, since the current administrative system is overloaded, but did not compare the potential benefits of a guardian to the responsibilities already imposed upon counsel. Guardians are not ordinarily appointed in commitment proceedings "unless the interests of justice so require." Minn.R. Civ.Commitment 13.01. Counsel failed to establish the trial court in this case erred by refusing to appoint a guardian ad litem.

## DECISION

The indeterminate commitment of mentally retarded patients without automatic judicial review does not violate appellant's right to due process of law. The trial court did not err by refusing to appoint a guardian ad litem to monitor appellant's condition and report to counsel.

The constitutional issues raised by appellant are important and the equal protection claim asserted by appellant is already before the supreme court. We request that court to consider the due process claim raised in this appeal also and certify this matter to the Minnesota Supreme Court pursuant to Minn.Stat. § 480A.10 (1984) and Minn.R.Civ.App.P. 118.

Affirmed and certified.

## CERTIFICATION AND REQUEST

WHEREAS, the above-entitled appeal is now pending in this court; and

WHEREAS, this court has determined that certification of the matter to the Supreme Court for accelerated review pursuant to Minn.R.Civ.App.P. 118, subd. 3, and Minn.Stat. § 480A.10, subd. 2(b) (1984) is appropriate for the following reasons:

(1) The question whether Minn.Stat. § 253B.13, subd. 2 (1984), which provides for indeterminate commitment, is unconstitutional is an important one upon which the Supreme Court has not, but should, rule,

(2) For the reasons and analysis as contained in the attached opinion.

IT IS HEREBY ORDERED that the supreme court approve the certification of this matter. Counsel for any party may file a response to this request with the Supreme Court Commissioner, 322 State Capitol, St. Paul, MN 55155 within ten days of the date of this document.