In the Matter of William G.
HARHUT, Jr.

No. C6–85–1432.

Supreme Court of Minnesota.

April 11, 1986.

Stephen D. Radtke, Bloomington, for appellant.

Thomas L. Johnson, Hennepin Co. Atty., John R. Owen, Asst. Hennepin Co. Atty., Minneapolis, Hubert H. Humphrey, III, Atty. Gen., Mary L. Stanislav, Sp. Asst. Atty. Gen., St. Paul, for respondent.

YETKA, Justice.

This case is here pursuant to a request to us from the court of appeals for accelerated review. The issue raised is the constitutionality of indeterminate commitment for mentally retarded patients under Minn. Stat. § 253B.13, subd. 2 (Supp.1985). We hold the statute is constitutional as long as several procedural safeguards are followed.

William G. Harhut, Jr., is a 35-year-old patient at the Faribault State Hospital who is blind and mildly mentally retarded. Displaying autistic behavior at times, he needs assistance in performing basic living skills such as dressing, washing, eating with utensils and other personal care. His condition has existed since birth and he has been a resident at Faribault State Hospital since 1980. In 1984, his mother brought a petition for involuntary commitment in Hennepin County District Court, Mental Health Division.

The district court referee held an initial commitment hearing on February 14, 1985. Adopting the referee's findings, the district court held that Harhut was mentally retarded within the meaning of Minn.Stat. § 253B.02, subd. 14 (1984) and Minn.Stat.

§ 253B.13 and ordered his commitment to the Faribault State Hospital until he acquired sufficient basic living skills to be placed in a community facility.[1] The statutory period of initial confinement is 6 months. Minn.Stat. § 253B.09, subd. 5 (1984).

The review hearing required by Minn. Stat. § 253B.12, subd. 4 was scheduled for April 30, 1985, but, on Harhut's motion, was continued until May 21, 1985. Harhut's counsel moved to dismiss the judicial commitment proceedings on grounds that Minn.Stat. § 253B.13 violates equal protection by providing for indeterminate commitment for mentally retarded persons, but not for mentally ill or chemically dependent persons. At the May 21 district court hearing, Hennepin County petitioned for Harhut's indeterminate commitment. The Faribault State Hospital submitted medical treatment reports concluding that Harhut was mentally retarded to a degree requiring indeterminate commitment at the Faribault State Hospital until he could be placed in a suitable community facility. The court ruled that section 253B.13 did not violate equal protection since the distinction between the nature of mental retardation and that of mental illness or chemical dependency provides a sufficient rational basis for the difference in commitment periods. The court further found that the patient's constitutional rights are adequately protected by Minn.Stat. § 253B.17, which allows the judicial review of involuntary commitment at anytime on motion of the patient or an interested party. The burden of proof in such judicial review is on the state, the court held, except when the issue is whether a less restrictive alternative treatment facility exists, in which case the burden of proof is on the patient. Harhut was ordered indefinitely committed to the Faribault State Hospital as of June 13, 1985.[2] He appealed

to the Minnesota Court of Appeals, which granted the motion of the Minnesota Attorney General to intervene.

The court of appeals upheld Harhut's commitment on October 8, 1985. *In re Harhut*, 374 N.W.2d 798 (Minn.Ct.App. 1985). Harhut challenged the sufficiency of the treatment reports on which the district court based its order, but the court of appeals found the documents to be in accordance with statutory requirements. The court further ruled that the difference in commitment periods in section 253B.13 was not a violation of equal protection. The indeterminate commitment provided only for mentally retarded patients was, the court found, rationally related to the legitimate state purpose of training and caring for mentally retarded persons. By request dated October 1, 1985, however, the court referred the constitutional issue to this court by a request for accelerated review. On November 6, 1985, this court approved accelerated review.

While Harhut's appeal is explicitly an equal protection challenge, his arguments also imply a due process challenge to section 253B.13. Subsequent cases have directly raised the due process issue. *See In re Desmond*, 381 N.W.2d 57 (Minn.Ct.App. 1986); *In re Frederickson*, 376 N.W.2d 736 (Minn.Ct.App.1985). We shall address in this case the constitutionality of section 253B.13 on both equal protection and due process grounds.

The issues raised are:

I. Whether the court of appeals erred in holding that treatment facility reports were in accordance with Minn. Stat. § 253B.12 (1984);

II. Whether Minn.Stat. § 253B.13, subd. 2 (Supp.1985), providing indeterminate commitment for mentally retarded patients, is constitutional under the equal protection and due pro-

---

1. The district court also ordered the hospital and the county to file periodic program and progress reports under penalty of contempt. While upholding Harhut's commitment, the Minnesota Court of Appeals reversed the district court's order mandating the periodic reports.

*In re Harhut*, 367 N.W.2d 628 (Minn.Ct.App.), *petition for further review denied* (Minn., filed June 27, 1985).

2. Harhut is presently on the waiting list at three community treatment facilities.

cess clauses of the federal and state constitutions.

I. *Whether the Court of Appeals Erred in Holding That the Treatment Facility Reports Were in Accordance With Minn.Stat. § 253B.12 (1984)*

While this issue was not certified by the court of appeals, we have allowed the parties to raise all appropriate issues.

Under section 253B.12, a treatment facility must file a timely report prior to the 6-month review hearing for initial commitment which contains the following information:

Subdivision 1. **Report.** Prior to the termination of the initial commitment order or final discharge of the patient, the head of the facility shall file a written report with the committing court with a copy to the patient and his counsel, setting forth in detailed narrative form at least the following:

(1) the diagnosis of the patient with the supporting data;

(2) the anticipated discharge date;

(3) an individualized treatment plan;

(4) a detailed description of the discharge planning process with suggested after care plan;

(5) whether the patient is in need of further care and treatment with evidence to support the response;

(6) whether any further care and treatment must be provided in a treatment facility with evidence to support the response;

(7) whether in his opinion the patient must continue to be committed to a treatment facility; and

(8) whether in his opinion the patient satisfies the statutory requirement for continued commitment, with documentation to support the opinion.

Subd. 2. **Basis for discharge.** If no written report is filed within the required time or if the written statement describes the patient as not in need of further institutional care and treatment, the proceedings shall be terminated by the committing court, and the patient shall be discharged from the treatment facility.

Minn.Stat. § 253B.12, subds. 1–2.

Harhut's counsel argues that the treatment reports required by section 253B.12 were incomplete and not signed by the head of the facility and, therefore, under section 253B.12, subdivision 2, the proceedings should have been terminated and Harhut discharged. Respondent maintains that the reports were complete and adequately authorized. Even if the reports were incomplete, respondent argues, dismissal and discharge would not be the correct remedy. The court of appeals found that the parties who signed the treatment reports were designees of the head of the Faribault State Hospital and, therefore, were statutorily sufficient authority. We agree.

Under Minn.Stat. § 253B.02, subd. 8 (1984), the head of a treatment facility is defined as "the person who is charged with overall responsibility for the professional program of care and treatment of the facility or *his designee*." (Emphasis added.) As the court of appeals found, the treatment reports were signed by the medical director of the Faribault State Hospital, and testimony supported the finding that the medical director was the designee of the head of the facility. Furthermore, the items required by section 253B.12, subdivision 1 were sufficiently covered in the treatment reports submitted to the district court. Therefore, the court of appeals correctly found that the reports were not in violation of section 253B.12.

II. *Whether Minn.Stat. § 253B.13, Subd. 2 (Supp.1985), Providing Indeterminate Commitment for Mentally Retarded Patients, is Constitutional Under the Equal Protection and Due Process Clauses of the Federal and State Constitutions*

Under the Minnesota Commitment Act of 1982, persons found to be mentally retard-

ed,[3] mentally ill or chemically dependent within the meaning of the statute may, on petition, be involuntarily committed to state guardianship:

> If the court finds by clear and convincing evidence that the proposed patient is a mentally ill, mentally retarded, or chemically dependent person and, that after careful consideration of reasonable alternative dispositions, including but not limited to, dismissal of petition, voluntary outpatient care, informal admission to a treatment facility, appointment of a guardian or conservator, or release before commitment as provided for in subdivision 4, it finds that there is no suitable alternative to judicial commitment, the court shall commit the patient to the least restrictive treatment facility which can meet the patient's treatment needs consistent with section 253B.03, subdivision 7.

Minn.Stat. § 253B.09, subd. 1. For all three categories of patients, the period of initial commitment must not exceed 6 months. *Id.*, subd. 5. Once the initial commitment period has elapsed, a hearing is held to determine whether continued commitment is necessary based on the report of the head of the treatment proceeding:

> The committing court shall not make a final determination of the need to continue commitment unless a hearing is held and the court finds by clear and convincing evidence that (1) the person continues to be mentally ill, mentally retarded or chemically dependent; (2) involuntary commitment is necessary for the protection of the patient or others; and (3) there is no alternative to involuntary commitment.

Minn.Stat. § 253B.12, subd. 4. The continued commitment period is different for mentally retarded patients than for mental-

ly ill or chemically dependent persons. While the latter are committed to, at most, only 1-year periods, after which the petition must be reviewed, mentally retarded patients are indefinitely committed:

> Subdivision 1. **Mentally ill persons.** If at the conclusion of a hearing held pursuant to section 253B.12, it is found that the criteria for continued commitment have been satisfied, the court shall determine the probable length of commitment necessary. No period of commitment shall exceed this length of time or 12 months, whichever is less.
>
> At the conclusion of the prescribed period, commitment may not be continued unless a new petition is filed pursuant to section 253B.07 and hearing and determination made on it. Notwithstanding the provisions of section 253B.09, subdivision 5, the initial commitment period under the new petition shall be the probable length of commitment necessary or 12 months, whichever is less. The standard of proof at the hearing on the new petition shall be the standard specified in section 253B.12, subdivision 4.
>
> Subd. 2. **Mentally retarded persons.** If, at the conclusion of a hearing held pursuant to section 253B.12, it is found that the person continues to be mentally retarded, the court shall order commitment of the person for an indeterminate period of time, subject to the reviews required by section 253B.03, subdivisions 5 and 7, and subject to the right of the patient to seek judicial review of continued commitment.
>
> Subd. 3. **Chemically dependent persons.** If, at the conclusion of a hearing held pursuant to section 253B.12, it is found that a person continues to be chemically dependent, the court shall order the continued commitment of the per-

---

**3.** For the purpose of the Minnesota Commitment Act, a mentally retarded person is defined as follows:

> "Mentally retarded person" means any person (a) who has been diagnosed as having significantly subaverage intellectual functioning existing concurrently with demonstrated deficits in adaptive behavior; and (b) whose recent

conduct is a result of mental retardation and poses a substantial likelihood of physical harm to himself or others in that there has been (i) a recent attempt or threat to physically harm himself or others, or (ii) a failure and inability to provide necessary food, clothing, shelter, safety, or medical care for himself.

Minn.Stat. § 253B.02, subd. 14 (1984).

son for a period of time not to exceed one year.

At the conclusion of the prescribed period, commitment may not be continued unless a new petition is filed pursuant to section 253B.07 and hearing and determination made on it. Notwithstanding the provisions of section 253B.09, subdivision 5, clause (c), the initial commitment period under the new petition shall be the probable length of commitment necessary or 12 months, whichever is less. Minn.Stat. § 253B.13. The mentally retarded patient has the right to seek judicial review of his or her continued treatment under Minn.Stat. § 253B.17, subd. 1:

> Any patient, except one committed as mentally ill and dangerous to the public, or any interested person may petition the committing court or the court to which venue has been transferred for an order that the patient is not in need of continued institutionalization or for an order that an individual is no longer mentally ill, mentally retarded, or chemically dependent, or for any other relief as the court deems just and equitable.

In addition, Minn.Stat. § 253B.03, subd. 5 (1984) requires periodic medical assessment of committed patients: "A patient has the right to periodic medical assessment. The head of a treatment facility shall have the physical and mental condition of every patient assessed as frequently as necessary, but not less often than annually." Minn. Stat. § 253B.03, subd. 7 (1984) requires that there also be quarterly program plans for patients committed to state guardianship.

Appellant argues that there is no rational basis or compelling state interest justifying the denial of periodic judicial reviews for mentally retarded patients when such reviews are mandated for mentally ill or chemically dependent persons. Appellant disputes the district court's finding that mental retardation is a condition different enough to justify the denial of periodic judicial review. The section 253B.17 hearing is not an adequate solution, according to the appellant, since the burden of proof

is placed on the patient and not on the state. He asks this court to declare section 253B.13, subdivision 2 unconstitutional or, in the alternative, to order periodic judicial review for all continually committed mentally retarded patients.

Respondent and intervenor maintain the lower courts correctly held that the difference in the continuing commitment periods is rationally related to a legitimate state end. They argue that mental retardation is not as readily curable as mental illness or chemical dependency, and the state has provided a system of treatment and release that is the most practical and effective for the mentally retarded patient. Sufficient safeguards are provided, they contend, by the patient's statutory right to petition for judicial review (especially since such patients have court-appointed counsel), the periodic medical assessment and treatment plans, and *Welsch v. Likins,* 550 F.2d 1122 (8th Cir.1977), which ordered the state to reduce state hospital populations. They also dispute that the burden of proof in a section 253B.17 hearing is on the patient or, if it is, that such a burden of proof is unconstitutional.

The equal protection clauses of the federal and state constitutions require that all persons similarly situated be treated alike under the law. *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982); *Price v. Amdal,* 256 N.W.2d 461, 468 (Minn.1977). In general, legislative classifications of persons will be sustained under the equal protection clauses if rationally related to a legitimate state interest. *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); *Bodin v. City of St. Paul,* 303 Minn. 555, 227 N.W.2d 794 (1975). However, higher standards of judicial review are necessary for certain suspect and quasi-suspect classifications. *See, e.g., Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (gender); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); *McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (race). The United

States Supreme Court has recently held that, under the federal constitution, classifications based on mental retardation do not require a more exacting standard of review. *City of Cleburne v. Cleburne Living Center,* —— U.S. ——, 105 S.Ct. 3249, 3255–58, 87 L.Ed.2d 313 (1985). The Court declined to recognize mentally retarded persons as a suspect or quasi-suspect class since their situation is best addressed by legislative action, there has been a distinct legislative response showing that the mentally retarded are not politically powerless, and such a rule would open the door to creating a new series of quasi-suspect classifications. *Id.*

■ In reviewing challenges to the constitutionality of legislative classifications, this court has stated: "[I]t must be recognized that statutes carry a presumption of constitutionality, and that it is not the role of the judiciary, in applying the rational basis standard, to question either the factual accuracy or political wisdom of the reasoning and judgment underlying the legislative enactment." *AFSCME Councils 6, 14, 65 & 96 v. Sundquist,* 338 N.W.2d 560, 570 (Minn.1983). The rational basis test entails a two-tiered analysis: First, does the statute have a legitimate purpose; and, second, was it reasonable for the legislature to believe that the use of this classification would promote that purpose? *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981); *Sundquist,* 338 N.W.2d at 570. A successful challenge under the rational basis test requires proof of unconstitutionality beyond a reasonable doubt. *Bodin,* 303 Minn. at 558, 227 N.W.2d at 797; *Head v. Special School District No. 1,* 288 Minn. 496, 505, 182 N.W.2d 887, 893 (1970), *cert. denied sub nom. Minneapolis Federation of Teachers, Local No. 59 v. Spannaus,* 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971).

■ As the district court found, the distinction between the commitment periods in section 253B.13 is based on the legislative judgment that mental retardation is, unlike chemical dependency or mental illness, a condition not usually suspectible of great or rapid improvement. The legislature decided that indeterminate commitment subject to judicial review on the motion of the patient was the more effective and efficient way to deal with the state's responsibility to treat mentally retarded persons. This is a legitimate public purpose, and it is not clear beyond a reasonable doubt that indeterminate commitment is an unreasonable means of assuring the state's interest. We hold, therefore, that section 253B.13 is not in violation of the equal protection clauses of the federal and state constitutions.

■ The due process claim presents a more difficult challenge to the statute's constitutionality. A procedural due process analysis involves the balancing of the following factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (citing *Goldberg v. Kelly,* 397 U.S. 254, 263–71, 90 S.Ct. 1011, 1018–22, 25 L.Ed.2d 287 (1970)); *Machacek v. Voss,* 361 N.W.2d 861, 863 (Minn.1985). Indeterminate commitment does raise a serious due process issue since the patient's basic personal liberty is affected. *See O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Doe v. Gallinot,* 657 F.2d 1017 (9th Cir.1981); *Fasulo v. Arafeh,* 173 Conn. 473, 378 A.2d 553 (1977). Moreover, the issue in a judicial review hearing will not just be whether a mentally retarded person has improved enough to function freely in society, but will also be whether the patient has sufficiently improved to merit placement in a less restrictive treatment center. Minn.Stat. §§ 253B.12, subd. 4, 253B.17,

subd. 1. Determinate commitment and yearly petition renewal is a substitute procedural safeguard, but the fiscal and administrative burden on the state would be heavy. It is a very close case as to whether the statute violates due process. Only the attorney general's and county attorney's disclosure of the process actually followed saves the statute from being overturned.

■■■ Respondents assure us that, in practice, no mentally retarded person indeterminately committed is without counsel and that periodic medical reports are always sent to the attorney representing the patient. Under Minnesota Commitment Act Rules 3–4, the duties of appointed counsel include "receiving reports about respondent, and taking appropriate actions in response thereto to advise the respondent of and protect his rights." Minn.R. Commitment 3 comment A(7). This is a part of counsel's responsibility as a vigorous advocate for the client's rights. *See, e.g.,* Janus & Wolfson, *The Minnesota Commitment Act of 1982, Summary and Analysis,* 6 Hamline L.Rev. 41, 55–59 (1983); *ABA Commission on the Mentally Disabled, Legal Issues in State Mental Health Care: Proposals for Change,* 286 (1981). This court will construe a statute as constitutional whenever such an interpretation is possible. *State on Behalf of Forslund v. Bronson,* 305 N.W.2d 748, 751 (Minn.1981); Minn.Stat. § 645.17, subd. 3 (1984). We, therefore, hold that indeterminate commitment of mentally retarded patients does not violate due process as long as the patient is continuously represented by an informed attorney and the additional safeguards outlined below are followed.

First, all periodic medical reviews of the mentally retarded must be sent to both the committing court and to the counsel of record for the patient. If, for any reason, initial counsel can no longer serve as the counsel of record, the committing court shall automatically appoint new counsel to represent the patient and all such reports shall thereafter be sent to new counsel. Second, without some periodic judicial review of the mentally retarded, there still exists the possibility, no matter how remote, of a patient falling through the cracks in the bureaucracy and languishing in a mental institution. We further hold, therefore, that there must be, in addition to the statutorily mandated annual medical review, a judicial review of a mentally retarded patient's status at least once every 3 years after the patient has been indeterminately committed. This does not mean that the commitment period automatically ends and the state must petition again for continued commitment, as it must under section 253B.13 for mentally ill or chemically dependent persons; nor is this review always to be the equivalent of a section 253B.17 hearing, which may still be brought at any time by the patient or other interested person. Instead, this is to be an automatic periodic review, the extent of which will vary at the sound discretion of the trial court. In many such reviews, the severity of mental retardation may be so manifest that the court will find it unnecessary to go into great detail or take adversary testimony. In other cases, where the degree of retardation is not as great and substantial progress has occurred, full adversary proceedings similar to that for initial commitment or a section 253B.17 hearing may be in order.

We believe the legislature should codify the procedural safeguards we have discussed in this opinion, but until it does, the rules we have set out shall be followed in all cases concerning the indeterminate commitment of mentally retarded persons.

■■■ Finally, appellant argues that the burden of proof in the judicial review of indefinite commitment under section 253B.17 would be on the petitioner and is, therefore, unconstitutional. If the burden of proof were on the patient, serious due process concerns would arise. *See, e.g., Fasulo v. Arafeh,* 173 Conn. 473, 378 A.2d 553 (1977). While section 253B.17 is not explicit concerning which party bears the burden of proof, by reference to the petition that must be annually filed for mental-

ly ill or chemically dependent patients, the burden of proof in a section 253B.17 hearing, which includes proving that the patient is committed to the least restrictive alternative treatment center available, is on the party seeking to continue commitment. Again, we employ the principle that this court must construe a statute in such a way as to avoid constitutional conflict. Minn.Stat. § 645.17, subd. 3. Therefore, the burden of proof in a section 253B.17 hearing is on the state. This ruling clarifies any uncertainty on the issue that may be generated by interpretation of previous decisions. *See Lausche v. Commissioner of Public Welfare*, 302 Minn. 65, 225 N.W.2d 366 (1974), *cert. denied*, 420 U.S. 993, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1975); *In re Restoration of Masters*, 216 Minn. 553, 13 N.W.2d 487 (1944); *see also* Janus & Wolfson, *The Minnesota Commitment Act of 1982, Summary and Analysis*, 6 Hamline L.Rev. 41 (1983).

The case is remanded to the trial court for such further relief as is required consistent with this opinion.