In the Matter of Jayne
FREDRICKSON.

No. C8–85–1514.

Supreme Court of Minnesota.

June 6, 1986.

Patrick W. Kelly, Minneapolis, for appellant.

Thomas L. Johnson, Hennepin Co. Atty., John R. Owen, Asst. Co. Atty., Minneapolis, for respondent.

AMDAHL, Chief Justice.

This case was certified to us for accelerated review from the Court of Appeals. It raises, among other things, the same constitutional challenge to Minn.Stat. § 253B.13, subd. 2 (Supp.1985), recently decided in *In re Harhut*, 385 N.W.2d 305 (Minn.1986). The Hennepin County District Court, Mental Health Division, originally committed Fredrickson to Faribault State Hospital (FSH) for an indeterminate period pursuant to subdivision 2 of section 253B.13. The court denied Fredrickson's motion to dismiss the commitment petition, rejecting Fredrickson's argument that subdivision 2 violated her rights of due process and equal protection. The court also refused to appoint a guardian ad litem for Fredrickson and refused to dismiss the commitment petition because of the alleged insufficiency of the treatment facility's statutorily required reports. The Court of Appeals affirmed the trial court's ruling on the questions of the appointment of a guardian ad litem and the sufficiency of the reports. The court also certified the constitutionality of subdivision 2 to us for accelerated review pursuant to Minn.Stat. § 480A.10, subd. 2 (1984), and Minn.R.Civ. App.P. 118. We now affirm the district court and the Court of Appeals.

Appellant, Jayne Fredrickson, is a 30-year-old woman who is currently committed to FSH for an indeterminate period pursuant to Minn.Stat. § 253B.13, subd. 2. Fredrickson has been consistently diagnosed as being profoundly mentally retarded. She is functionally equivalent to a 10-month-old child and her expressive language age is approximately 0–6–months old. She has difficulty performing such tasks as dressing, grooming, and eating. She has no concept of time, numbers, or money, and cannot read, write, or develop vocational skills. Fredrickson has also been diagnosed as having almost no survival skills. She has no awareness of environmental hazards, such as traffic, fire, and weather. She also does not respond to fire drills and cannot dress to accommodate the weather. Consequently, she requires constant supervision.

Fredrickson has manifested several types of specific behavior that FSH is currently treating. First, she has exhibited certain types of maladaptive behavior, including self-injurious behavior (SIB), PICA (eating inedible items), and temper tantrums. When distressed, she will throw herself on the floor, inducing injury. She will also hit her head against walls and pinch herself until she bruises.

Second, Fredrickson has shown a limited ability to communicate effectively. She is nonverbal and can only communicate through certain sounds. She does not communicate in any normal, regular method, nor will she point to objects she desires.

Finally, Fredrickson has limited social skills. She rarely initiates interaction with other patients or staff, although she will occasionally attempt to sit on a staff person's lap. She also refuses to share possessions, wait for objects she wants, or participate independently in social activities.[1]

On December 5, 1984, Fredrickson's mother filed a petition to have Fredrickson committed to FSH. After the petition for commitment was filed, Fredrickson was ex-

---

1. In the past several years, Jayne's social and physical deficiencies have been improving. She has reduced the number of times per day that she exhibits the problems discussed above, although none have been completely eliminated. She is also still dependent on outside supervision.

amined by two different psychologists pursuant to Minn.Stat. § 253B.07, subds. 3–5. Both agreed that she was profoundly retarded, although Dr. Amado, the examiner appointed by Fredrickson's attorney, disagreed that Jayne should be committed to FSH. Dr. Amado, however, gave no alternatives to commitment in FSH.

On January 10, 1985, a hearing was held on the petition for commitment. Although all who testified agreed that Fredrickson was profoundly retarded, Dr. Amado disagreed with others who testified that FSH was the least restrictive alternative for her. He felt that she could function effectively in a less restrictive community placement.

On January 16, 1985, the district court ordered Fredrickson committed to FSH for 6 months pursuant to Minn.Stat. § 253B.09, subd. 5 (1984). The court concluded that the "least restrictive alternative currently available which can meet [Jayne's] needs is Faribault State Hospital." The court also ordered FSH to submit a report pursuant to Minn.Stat. § 253B.03, subd. 7 (1984), within 6 months, detailing its efforts to reduce Fredrickson's major problems as discussed during the hearing.[2]

On March 12, 1985, FSH filed an initial report with the court pursuant to section 253B.03, subd. 7. The report described Fredrickson's condition and progress since the January 16 commitment order. A second report was filed by FSH on July 8, 1985, updating the March 12 report.

A hearing was held on July 23, 1985, to review Fredrickson's continued commitment. *See* Minn.Stat. § 253B.12, subd. 4. Prior to the hearing, Fredrickson's attorney filed a motion with the court, challenging the constitutionality of Fredrickson's commitment under Minn.Stat. § 253B.13, subd. 2. Fredrickson's attorney argued that subdivision 2 of section 253B.13 violated the constitutional protections of due process and equal protection by requiring indeterminate commitment of mentally retard-

ed persons but not those who are mentally ill or chemically dependent. Fredrickson's attorney also asked the court to appoint a guardian ad litem for Fredrickson and asserted that the petition for commitment should be dismissed because FSH failed to file complete reports under Minn.Stat. § 253B.12, subd. 1. On July 26, 1985, the court denied Fredrickson's motion on all counts and ordered that Fredrickson be committed to FSH for an indeterminate period pursuant to Minn.Stat. § 253B.13, subd. 2.

■ 1. Fredrickson's first challenge is to the constitutionality of Minn.Stat. § 253B.13, subd. 2. She challenges subdivision 2 on equal protection and procedural due process grounds. We have, however, recently decided this issue in *In re Harhut*, 385 N.W.2d 305 (Minn.1986). In *Harhut*, we upheld subdivision 2 on equal protection grounds, finding a rational basis for the distinction between mentally retarded individuals and those who are chemically dependent or mentally ill. We also held that subdivision 2 satisfied procedural due process requirements, but only as modified.

*Harhut* disposes of this issue in Fredrickson's case. The district court's denial of her constitutional challenge to subdivision 2 is therefore affirmed, subject to the procedural constraints imposed by *Harhut*.

2. Fredrickson also raises a constitutional challenge to the trial court's refusal to appoint a guardian ad litem to represent her during the indeterminate commitment period. She argues that this failure violates her rights to equal protection and due process under both the state and federal constitutions. She requests that a guardian ad litem be appointed to represent her rights during the period of indeterminate commitment.

In considering whether a guardian ad litem should be appointed in this case, it is helpful to first examine what safeguards

---

2. Fredrickson appealed the district court's January 16 order to the Court of Appeals. The Court of Appeals upheld the order placing Jayne in FSH, holding that the district court did not err

in rejecting alternatives to FSH. *See In re Harhut*, 367 N.W.2d 628 (Minn.App.), *petition for further review denied* (Minn., June 27, 1985).

are already established by the Minnesota Commitment Act of 1982. Under Minn. Stat. § 253B.03, subd. 9 (1984), a patient has a right to counsel at any proceeding under the Act:

> A patient has the right to be represented by counsel at any proceeding under this chapter. The court shall appoint counsel to represent the proposed patient if neither the proposed patient nor others provide counsel. Counsel shall be appointed at the time a petition is filed pursuant to section 253B.07. Counsel shall have the full right of subpoena. In all proceedings under this chapter, counsel shall: (1) consult with the person prior to any hearing; (2) be given adequate time to prepare for all hearings; (3) continue to represent the person throughout any proceedings under this charge unless released as counsel by the court; and (4) be a vigorous advocate on behalf of his client.

The Rules of Civil Commitment detail the boundaries of this right of representation. Under Minn.R.Civ.Commitment 3.01, "The court shall appoint counsel for respondent [patient] immediately upon the filing of a petition, and shall assure that representation is available to respondent throughout the proceeding in accordance with these Rules."

The type of representation expected from counsel is detailed in Comment A to Rule 3. It includes:

> 1. Investigating, preparing for, and representing respondent at the commitment hearings;
>
> 2. Receiving any reports about respondent, and taking appropriate actions in response thereto to advise the respondent of and protect his or her rights; and
>
> 3. Counseling and representing respondent with respect to any other judicial proceeding under the M.C.A. affecting respondent, whether initiated by petitioner, respondent, or other person or agency.

Minn.R.Civ.Commitment 3 comment A. In addition, comment B states, "It is the intention of [Rule 3] that respondent not be permitted to waive the right to representation in accordance with these Rules." *Id.* comment B.

Minn.R.Civ.Commitment 4 also details the duties of counsel. Several sections of Rule 4 apply in this case. First, Rule 4.01 states, "Respondent's counsel, as in other adversary proceedings, shall advocate vigorously on behalf of respondent." Minn.R. Civ.Commitment 4.01. With respect to counsel's duty to continue representing the patient, Rule 4.02 states, "Counsel shall continue to represent respondent in all proceedings in which respondent has right to counsel under the M.C.A. or these Rules, unless and until permitted to withdraw by the court." *Id.* Rule 4.02. Finally, Rule 4.04 discusses counsel's duty of representation for a patient who cannot articulate his or her own desires:

> To the extent that respondent does not articulate his desires in any particular aspect of the proceeding, counsel shall take the position which preserves respondent's legal rights, including opposing the petition.

*Id.* Rule 4.04.

The Commitment Rules also provide for the appointment of a guardian ad litem in the appropriate case. The right, however, is stated in the negative:

> No guardian ad litem shall be appointed for respondent unless the interests of justice so require.

Minn.R.Civ.Commitment Rule 13.01. Comment A to Rule 13 reveals when a guardian ad litem was intended to be appointed under the rules:

> In some circumstances, the instructions of a respondent to counsel (e.g., not to oppose the petition), may undermine the adversary process. Appointment of a guardian ad litem may be necessary in such cases to insure that the factual and legal issues before the court are fully explored.

*Id.* comment A.

As the rules indicate, the Commitment Act provides representation of a committed patient mainly through legal counsel. Only

in certain circumstances, where for some reason counsel's representation is rendered ineffective, does the Act intend that a guardian ad litem be appointed. The question, then, in this case is whether Fredrickson's rights of equal protection and due process have been violated by the court's failure to appoint her a guardian ad litem.

▪██ A. *Equal Protection.* Fredrickson raises an equal protection challenge to the denial of a guardian ad litem in her case. In doing so, however, she has failed to state how the trial court has impermissibly drawn a classification that denies her equal protection. Although we cannot formulate an argument for a party, we assume that the only classification Fredrickson could be challenging is the denial of a guardian ad litem to a person in her condition, as opposed to other patients to whom the trial court has appointed guardians ad litem.

The equal protection standard of review for persons in Fredrickson's position is the rational basis standard. *See City of Cleburne v. Cleburne Living Center,* ——— U.S. ———, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985); *Harhut, supra.* When applying the rational basis standard, we make two inquiries: (1) Does the challenged classification have a legitimate purpose? (2) Was it reasonable for lawmakers to believe that use of the challenged classification would promote that purpose? *AFSCME Councils 6, 14, 65 & 96 v. Sundquist,* 338 N.W.2d 560, 570 (Minn.1983) (quoting *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981)).

A rational basis exists in this case to justify the classification being established. The legitimate purpose for the classification in this case is the fact that guardians ad litem are not necessary in every case of indeterminate commitment. A guardian ad litem is necessary only where the representation provided by a patient's counsel is for some reason rendered ineffective. It was reasonable for lawmakers to believe that Minn.R.Civ.Commitment 13 promotes this

legitimate purpose by allowing a court to appoint a guardian ad litem where "the interests of justice so require." The court is able to examine the representation being provided to determine whether it is effective. Appointed counsel in this case can more than adequately represent Fredrickson's interests in the future. A guardian ad litem is not likely to increase that representation during Fredrickson's indeterminate commitment.

██ B. *Due Process.* Fredrickson also raises a procedural due process challenge to the court's failure to appoint a guardian ad litem. A procedural due process analysis involves balancing the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of the additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Machacek v. Voss,* 361 N.W.2d 861, 863 (Minn. 1985). We have recognized that indeterminate commitment raises serious due process questions because a patient's basic liberty is affected. *See Harhut, supra.*

Despite the fact that Fredrickson's basic liberty interest is involved in this case, no due process violation has occurred. Little risk of an erroneous deprivation of this interest exists under the procedure currently provided. Fredrickson is not only entitled to the type of legal representation detailed above, but is also entitled to the additional procedural restraints imposed by *Harhut.* Counsel for Fredrickson must be Fredrickson's vigorous advocate and must represent her in a way that preserves her legal rights. In addition, counsel is to receive all reports concerning Fredrickson's condition and progress, must represent her

at the review hearing provided by *Harhut*, and may bring a motion under Minn.Stat. § 253B.17 to have her placed in a less restrictive facility. Finally, counsel must continue to represent Fredrickson until specifically released from that duty by the district court, and then new counsel must be appointed. It is difficult to imagine how this procedure could be considered an erroneous deprivation of Fredrickson's liberty or what probable value a guardian ad litem could be in this case. We therefore uphold the district court's ruling that a guardian ad litem was not proper in this case.

3. Finally, Fredrickson challenges the sufficiency of the review reports filed by FSH pursuant to Minn.Stat. § 253B.12, subd. 1 (1984). Fredrickson argues that the March 12 and July 8 reports failed to meet the statutory requirements of subdivision 1. Because the reports were incomplete, Fredrickson argues, the petition for commitment should be dismissed under Minn.Stat. § 253B.12, subd. 2.

Minn.Stat. § 253B.12, subd. 4, requires a court committing a person to an initial 6-month period under Minn.Stat. § 253B.09, subd. 5, to hold a review hearing at the end of such time. The purpose of the hearing is to determine whether the person continues to be mentally deficient, whether involuntary commitment is necessary for the protection of the patient and others, and whether an alternative to involuntary commitment exists. *Id.*, subd. 4. To assist the court in making this decision, subdivision 1 of section 253B.12 requires the head of the facility holding the patient to file a report detailing the patient's current status and need for continued commitment. If the treating facility fails to file a review report, the petition for commitment must be dismissed and the patient released. *Id.*, subd. 2.

Fredrickson raises three of the statutory requirements under section 253B.12, subd. 1, as grounds for finding the reports filed by FSH insufficient. They are:

1. The failure to state an anticipated discharge date as required by Minn.Stat. § 253B.12, subd. 1(2);

2. The failure to give a detailed description of the discharge planning process with a suggested aftercare plan as required by Minn.Stat. § 253B.12, subd. 1(4);

3. The failure to state whether further care and treatment must be provided in a treatment facility with evidence to support the response as required by Minn.Stat. § 253B.12, subd. 1(6).

We disagree with Fredrickson that the reports filed by FSH are insufficient under Minn.Stat. § 253B.12, subd. 1. Although FSH did not specifically address each of the requirements of subdivision 1, the circumstances of this case make the reports sufficient. Fredrickson is profoundly mentally retarded and needs constant supervision and care. Witnesses at both the initial commitment hearing and the 6-month review hearing indicated that no less restrictive facilities were available for her at that time. In fact, Dr. Amado, who believed that Fredrickson could live in a less restrictive environment, knew of no facility that would currently accept Fredrickson as a patient. Although no specific discharge date was given in either of the FSH reports, elimination of Fredrickson's problems was considered a long range goal, requiring intensive training. It is difficult to see how any anticipated discharge date could have been stated in these reports as required by subdivision 1(2), given the extent of Fredrickson's deficiencies.

Also, although the reports did not detail the discharge planning process as required by Minn.Stat. § 253B.12, subd. 1(4), they did discuss Fredrickson's discharge, concluding that it was not feasible at that time. This fact, when considered with the surrounding circumstances, makes the report sufficient under subdivision 1(4).

Finally, the FSH reports contained a sufficient description of the further care and treatment needed by Fredrickson, as required by subdivision 1(6). Attached to the FSH reports was a copy of Fredrickson's annual report, which detailed the problems FSH was attempting to treat and

the progress achieved. The annual report also described the treatment Fredrickson would be receiving in the next year. An examination of this report reveals a sufficient description of the future care Fredrickson was to receive in order to comply with subdivision 1(6).[3]

We affirm the determination of the district court on the constitutionality of Minn. Stat. § 253B.13, subd. 2, and hold that such statute as modified by *Harhut* meets constitutional standards. The procedural modifications detailed in *Harhut* are to be applied in the instant case. We also affirm the appeals court determination that the district court's refusal to appoint a guardian ad litem did not violate Fredrickson's constitutional rights and that the reports filed by FSH were sufficient under Minn. Stat. § 253B.12, subd. 1.

Affirmed.

---

**3.** Although the reports filed by FSH have been upheld in this case, we caution treatment facilities in the future to fully comply with the requirements of Minn.Stat. § 253B.12, subd. 1. The reports should contain a complete discussion of each of the factors listed in subdivision 1, along with any other relevant material. The facility should specifically address each factor so that a committing court can fully understand the patient's needs and comply with the requirements of the Commitment Act.