In re the Matter of Everett SCHMIDT.

No. C4-88-2593.

Supreme Court of Minnesota.

July 28, 1989.

Rehearing Denied Aug. 31, 1989.

Rudy, Prevost, Gassert, Yetka, Korman & Belfry, K. Scott Belfry, Cloquet, for appellant.

Hubert H. Humphrey, III, Atty. Gen., James A. Alexander, Sp. Asst., Beverly Jones Heydinger, Asst., St. Paul, for respondent.

## OPINION

KELLEY, Justice.

Appellant Everett Schmidt, a resident at the Moose Lake Regional Treatment Center, claims that Minn.Stat. § 253B.03, subd. 6a (1988), a statute governing the administration of neuroleptic medication to mentally ill persons committed to state hospitals, impermissibly infringes on the privacy and due process rights guaranteed to him by the Constitutions of the United States and the State of Minnesota. Following a *Jarvis* hearing,[1] the Carlton County District Court issued an order authorizing the administration of neuroleptic medication and an order declaring that the statute violated neither appellant's right to privacy nor his due process rights. We granted accelerated review pursuant to Minn.R.Civ.App.P. 118. We now affirm.

Appellant, a 71–year–old patient, has resided in a state hospital or nursing homes since the age of 19 years. In June 1988, he was committed to the Moose Lake Regional Treatment Center from the Carlton Nursing Home following an incident of physical aggression directed toward another patient.

In 1988, following our decision in *Jarvis v. Levine*, 418 N.W.2d 139 (Minn.1988) the legislature amended Minn.Stat. § 253B.03 to add subdivision 6a providing procedures to be employed in the administration of neuroleptic medication to mentally ill committed persons.[2] In September 1988, the medical director of the Moose Lake Regional Treatment Center sought an order appointing a guardian ad litem with authority to consent to the administration of neuroleptic medications to appellant Schmidt pursuant to that subdivision. By counter motion appellant challenged the constitutionality of the statute. Although the trial court initially appointed a guardian ad litem, the original appointment did not authorize the guardian to consent to the neuroleptic medication. Later, following the *Jarvis* hearing, the court did issue an order authorizing the administration of the medication, and, in doing so, rejected appellant's challenge to the constitutionality of the statute.

Appellant, here, as he did below, asserts that because the statute fails to afford to him the right to an adversarial court hearing and the right to counsel, it circumvents the guidelines this court established in *Price v. Sheppard*, 307 Minn. 250, 239 N.W.2d 905 (1976) and *Jarvis*, 418 N.W.2d 139. Because those guidelines were promulgated to ensure against impermissible

---

1. In *Jarvis v. Levine*, 418 N.W.2d 139 (Minn. 1988), we held that the procedures outlined in *Price v. Sheppard*, 307 Minn. 250, 239 N.W.2d 905 (1976) are mandated before the administration of neuroleptic drugs to committed mentally ill patients. Those procedures generally provided for an adversarial hearing to determine the reasonableness and necessity of the prescribed treatment. *See Price*, 307 Minn. at 262, 239 N.W.2d at 913.

2. The amendment, Act of April 28, 1988, ch. 689, art. 2, § 119, 1988 Minn. Laws 1279, 1362–63, which became effective August 1, 1988, provides:

   Subd. 6a. **Administration of neuroleptic medications.** (a) Neuroleptic medications may be administered to persons committed as mentally ill or mentally ill and dangerous only as described in this subdivision.

   (b) A neuroleptic medication may be administered to a patient who is competent to consent to neuroleptic medications only if the patient has given written, informed consent to administration of the neuroleptic medication.

   (c) A neuroleptic medication may be administered to a patient who is not competent to consent to neuroleptic medications only if

a court approves the administration of the neuroleptic medication or

   (1) the patient does not object to or refuse the medication;

   (2) a guardian ad litem appointed by the court with authority to consent to neuroleptic medications gives written, informed consent to the administration of the neuroleptic medication; and

   (3) a multidisciplinary treatment review panel composed of persons who are not engaged in providing direct care to the patient gives written approval to administration of the neuroleptic medication.

   (d) A person who consents to treatment pursuant to this subdivision is not civilly or criminally liable for the performance of or the manner of performing the treatment. A person is not liable for performing treatment without consent if written, informed consent was given pursuant to this subdivision. This provision does not affect any other liability that may result from the manner in which the treatment is performed.

state invasion of his constitutional right to privacy, and to also reaffirm a patient's due process rights, he argues that the amendment, as the result of the omission, facially infringes upon his constitutional rights.

Before addressing the constitutional issues appellant seeks to raise, we must first determine whether we have jurisdiction to hear this case. As indicated, basic to appellant's constitutional challenge is his assertion that the statute deprives him of right to counsel and the claimed right to an adversarial court hearing. In his case, however, at all stages, appellant has, in fact, been represented by counsel, and did receive a *Jarvis* type adversarial hearing in the trial court. Therefore, the issues raised may be moot, and thus, not subject to review.

■ Well established in this state's jurisprudence is the precept that the court will decide only actual controversies. If the court is unable to grant effectual relief, the issue raised is deemed to be moot resulting in dismissal of the appeal. *State ex rel. Lezer v. Tahash,* 268 Minn. 571, 128 N.W.2d 708 (1964). Moreover, the court does not issue advisory opinions, nor decide cases merely to establish precedent. *Sinn v. City of St. Cloud,* 295 Minn. 532, 203 N.W.2d 365 (1972). Although neither party in this case raised the question of mootness, that failure, of itself, does not eliminate the issue. As a constitutional prerequisite to the exercise of jurisdiction, we must consider the mootness question even if ignored by the parties. *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 537, 98 S.Ct. 2923, 2927, 57 L.Ed.2d 932 (1978).

■ Notwithstanding this aversion to consideration of moot questions, appellate courts have carved out an exception provided the issue is "capable of repetition yet evading review." During oral argument, both parties in the instant case claimed that the facts of this case bring the constitutional issues, which appellant seeks to raise, within the scope of this limited exception. When deemed appropriate, this court has applied the exception. *See Elzie v. Com-*

*missioner of Public Safety,* 298 N.W.2d 29, 32 (Minn.1980); *Davis v. Davis,* 297 Minn. 187, 188, 210 N.W.2d 221, 223 n. 1 (1973). However, the mere fact that the issue is capable of repetition, of itself, does not necessarily trigger application of the exception. *State ex rel. Doe v. Madonna,* 295 N.W.2d 356, 360 (Minn.1980). *See also Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

Because at all stages appellant has been afforded an adversarial court hearing while represented by counsel, we acknowledge that the mootness issue is extremely close. However, notwithstanding the presence of some doubt, we recognize that the challenged statute undoubtedly will be utilized by state hospital authorities in attempting to treat other mentally ill committed patients by neuroleptic medication, and, therefore, actions taken pursuant to the statutes of which this appellant complains, are capable of repetition—even with respect to treating this appellant himself. Moreover, should we decline jurisdiction in this case, review of the constitutionality of the statute could be evaded by others in the future by simply affording a patient a *Jarvis* type hearing whenever the constitutionality of the statute is challenged by a patient's attorney. For these reasons, we hold that under the limited exception, we do have jurisdiction to decide the constitutional challenges raised by the appellant in this case.

At the outset, we note that, as in any case involving a constitutional challenge to a statute, the statute bears a presumption of validity. *State v. Hamm,* 423 N.W.2d 379, 380 (Minn.1988); *Essling v. Markman,* 335 N.W.2d 237, 239 (Minn.1983); *State on Behalf of Forslund v. Bronson,* 305 N.W.2d 748, 751 (Minn.1981). A party challenging the constitutionality of the statute has the onus of establishing beyond a reasonable doubt that the statute violates a claimed right. *Hamm,* 423 N.W.2d at 380; *Essling,* 335 N.W.2d at 239; *Forslund,* 305 N.W.2d at 751.

■ Since at least 1976, we have recognized that "intrusive" forms of medical treatment of mentally ill patients may seri-

ously infringe upon a committed mental patient's right to privacy—or the concept of "personal autonomy"—under the federal constitution. *See Price v. Sheppard,* 307 Minn. 250, 256–58, 239 N.W.2d 905, 910–911 (1976). In *State v. Gray,* 413 N.W.2d 107 (Minn.1987), we acknowledged a right to privacy which includes the right to be free from its invasion by the state without consent under the Minnesota Constitution's Bill of Rights. *Id.* at 111. And in *Jarvis,* 418 N.W.2d 139, 147–49, after careful analysis of the legal and psychiatric literature relative to the subject, we specifically held that under Minnesota Constitution, art. 1, §§ 1, 2 and 10, the involuntary administration of neuroleptics involves such an "intrusive" invasion of privacy as to require substantially the same procedural protections delineated for electro shock therapy in *Price.*[3] We address the constitutional issues raised by appellant in the instant case solely under the Minnesota Constitution, which may afford mentally ill involuntarily committed patients greater privacy and due process procedural protections than does the federal constitution. *See Jarvis,* 418 N.W.2d at 148–49.

Comparison of the 1988 amendment, which added subdivision 6a to Minn.Stat. § 253B.03, with the constitutionally guaranteed procedural protections as adopted and set out in *Price* and *Jarvis* demonstrates that the amended statute facially provides to the patient, in substance, a procedure which protects the patient from the exercise of sole unrestrained discretion of the medical personnel at our state hospitals with respect to the use of such invasive procedures. The statute, therefore, attempts to address the concerns we expressed in *Price*—that the imposition of an intrusive form of treatment, such as this, must not rest solely in the discretion of the medical personnel at the state institution. *Price,* 307 Minn. at 262, 239 N.W.2d at 913. Because we conclude the amendment provides a procedural framework which substantially addresses those concerns we expressed in *Price* and *Jarvis,* we hold that facially the statute violates neither the involuntarily committed patient's right to privacy nor due process under article 1—the Bill of Rights—of the Minnesota Constitution.

Appellant's constitutional challenge to the amendment focuses primarily on Minn. Stat. § 253B.03, subd. 6a(c) (1988) which provides a procedure to be employed preliminary to the legal administration of neuroleptic medication when the patient is incompetent to consent. Appellant contends that whenever a patient, who is incompetent to give an informed consent, neither manifests objections to, nor refusal of, the medication, section 253B.03, subdivision 6a(c)(1), in effect, creates a presumption that the patient consents to the medication. By concluding that the statute makes passive failure to object equivalent to affirmative expression of consent, appellant argues the amendment inadequately affords to the patient freedom from the invasion of this right to privacy. The problem with this argument is that it ignores other protections in the statute to arrive at the conclusion that the statute permits administration of neuroleptic medication any time an incompetent patient passively fails to object to the treatment. Such, however, is clearly not the case. In addition to the lack of any overt manifestation of objection or refusal, written informed consent by the patient's court appointed guardian ad litem, *see* Minn.Stat. § 253B.03, subd. 6a(c)(2) as well as approval by a multidisciplinary re-

---

**3.** The procedures there adopted in *Price* were:

(1) If the patient is incompetent to give consent or refuses consent or his guardian other than persons responsible for his commitment also refuses his consent, before more intrusive forms of treatment may be utilized, the medical director of the state hospital must petition the probate division of the county court in the county in which the hospital is located for an order authorizing the prescribed treatment;

(2) the court shall appoint a guardian ad litem to represent the interests of the patient;

(3) in an adversary proceeding, pursuant to the petition, the court shall determine the necessity and reasonableness of the prescribed treatment.

*Price,* 307 Minn. at 262, 239 N.W.2d at 913 (footnotes omitted).

view panel, *see* Minn.Stat. § 253B.03, subd. 6a(c)(3) must be obtained before employment of the invasive procedure. Guardian ad litem consent is implicit in the *Price* procedure where a court order is required if the incompetent patient or his guardian refuses to consent. *See Price*, 307 Minn. at 262, 239 N.W.2d at 913.[4] Thus, contrary to appellant's assertion, under the statute no presumption of consent arises from absence of objection or refusal by the incompetent patient. Rather, the statute requires informed consent by the guardian ad litem authorized by a court to give such consent, and, as well, written approval by a multidisciplinary review panel composed of persons not engaged in providing direct care to the patient.[5]

The statutory procedure set forth in Minn.Stat. § 253B.03, subd. 6a and those procedures enumerated by this court in *Price* and *Jarvis* both require an adversarial hearing with attorney representation if an incompetent person overtly manifests refusal of neuroleptic medication treatment. Similarly, implicit in such procedure is the requirement that even if the patient has failed to evidence affirmative refusal of treatment, but either the guardian ad litem, who has been appointed and given authority by the court, or the medical re-

view panel refuses consent or approval, there must likewise be an adversarial hearing. Finally, we note that notwithstanding the absence of an absolute requirement of an adversarial court hearing, the statute implicitly contemplates that the trial court exercise discretion in granting or denying the petition by at least a summary order even though the court appointed guardian ad litem has made and filed an informed consent and the statutorily created medical review panel has approved in writing. Thus, we conclude that the statute substantially addresses the underlying concerns we articulated in *Price* and *Jarvis*, and provides to a mentally ill patient a procedure substantially comporting with that we held to be necessary in those decisions. Therefore, we reject appellant's constitutional challenge wherein he asserts the amendment is facially unconstitutional. We hold that the structured statutory procedures guarantee that a patient's right to privacy protected by the Minnesota Constitution is not facially impermissibly invaded.[6]

■ Appellant additionally asserts that the statute facially violates the due process rights afforded to him by the Bill of Rights of the Minnesota Constitution because it denies to him the right to counsel and the right to an adversarial hearing.[7] Notice

---

4. We note the statute fails to specifically provide that the guardian ad litem with authority to consent be some person other than one responsible for the patient's commitment. We have confidence that trial courts will be diligent in ensuring that any guardian ad litem appointed be independent as required by *Price. See Price*, 307 Minn. at 262 n. 11, 239 N.W.2d at 913.

5. Minnesota is not alone in requiring judicial supervision when an incompetent patient refuses neuroleptic medication. *See, e.g., Harper v. State*, 110 Wash.2d 873, 759 P.2d 358 (1988); *In re Bryant*, 542 A.2d 1216 (D.C.App.1988); *In re M.P.*, 510 N.E.2d 645 (Ind.1987); *People v. Medina*, 705 P.2d 961 (Col.1985); *Rogers v. Comm'r Dep't Mental Health*, 390 Mass. 489, 458 N.E.2d 308 (Mass.1983).

6. Several articles have addressed the general issue of adequately protecting an incompetent patient's rights when intrusive treatment is contemplated. Those articles include: Note, *Developments in the Law—Civil Commitment of the Mentally Ill*, 87 Harv.L.Rev. 1190 (1974) (includes in its recommendations to protect incompetent patients a court appointed guardian);

Note, *Conditioning and Other Technologies Used to "Treat?" "Rehabilitate?" "Demolish?" Prisoners and Mental Patients*, 45 So.Cal.L.Rev. 616 (1972) (discussing attorney consent, adversarial judicial hearings or appointed guardian authority to give or withhold consent as alternatives to protect incompetent patients). The American Psychiatric Association Task Force Report of 1975 recommended that "if the patient is found not competent, an impartial third party, designated by the court, should be given authority to consent." Plotkin, *Limiting the Therapeutic Orgy: Mental Patients' Right to Refuse Treatment*. 72 Nw. U.L.Rev. 461, 503 (1977).

7. On appeal in this court, Schmidt likewise claims a violation of his state constitutional right to equal protection. That issue was not raised before the district court, except in passing during oral argument. The trial court, however, based its decision on appellant's due process and privacy claims and did not address any equal protection argument.

The record contains no evidence to substantiate the claimed violation of equal protection. The determination of a statute "must stand or

and opportunity to be heard are essential to due process. *Juster Bros. v. Christgau,* 214 Minn. 108, 119, 7 N.W.2d 501, 508 (1943). The Minnesota Constitution does not specifically grant to a patient in a state mental institution a right to counsel in the same sense that it does to an accused in a criminal proceeding. *See, e.g.,* Minn. Const. art. 1, § 6. Nonetheless, the deprivation of personal liberty of one involuntarily committed as a mentally ill and dangerous patient is not so dissimilar to that of one incarcerated under the criminal law that we assume, without deciding, as argued by appellant, that the constitutional concept of due process would also encompass the right to assistance of counsel in a proceeding such as this one.[8] Minn.Stat. § 253B.03, subd. 6a, does not specifically

require that an incompetent patient be afforded counsel in this type of proceeding, and, because it does not, appellant argues that it deprives him of due process. That conclusion, however, does not necessarily follow. Appellant, or any other patient in a similar proceeding under the statute, is not denied the right to counsel. Minn.Stat. § 253B.03, subd. 9 (1988)[9] requires a court appointed attorney to be present at all proceedings arising under chapter 253B. Moreover, Rules 3 and 4 of Special Rules of Procedure Governing Proceedings under the Minnesota Commitment Act of 1982 effective September 1, 1982, *see* Minn.Stat. Ann. ch. 253B, App. (West Supp.1988), specifically assures appointment of counsel and delineates, in detail, counsel's responsibility in protecting the patient's rights.[10]

---

fall upon the record before the lower court and not upon assumptions this court might make in the absence of proof incorporated in a settled case." *Klicker v. State,* 293 Minn. 149, 152, 197 N.W.2d 434, 436 (1972). We are limited to those issues presented to and considered by the trial court. *Thayer v. American Fin. Advisers, Inc.,* 322 N.W.2d 599, 604 (Minn.1982). Thus, appellant's equal protection claim is not before us, and we decline to address it.

**8.** A number of courts have held that in commitment proceedings, as distinguished from the proceeding before the court involving the administration of invasive medical procedures, that there is a due process right to counsel. *See, e.g. Lessard v. Schmidt,* 349 F.Supp. 1078, 1097–1100 (E.D.Wis.1972); *Heryford v. Parker,* 396 F.2d 393, 396 (10th Cir.1968); *Quesnell v. State,* 83 Wash.2d 224, 517 P.2d 568 (1973). *See also* Janus & Wolfson, *The Minnesota Commitment Act of 1982—Summary and Analysis,* 6 Hamline L.Rev. 41, 55–59 (1983); Developments in the Law—Civil Commitment of the Mentally Ill, 87 Harv.L.Rev. 1190 (1974).

**9.** Minn.Stat. § 253B.03, subd. 9 reads:

Subd. 9. **Right of counsel.** A patient has the right to be represented by counsel at any proceeding under this chapter. The court shall appoint counsel to represent the proposed patient if neither the proposed patient nor others provide counsel. Counsel shall be appointed at the time a petition is filed pursuant to section 253B.07. Counsel shall have the full right of subpoena. In all proceedings under this chapter, counsel shall: (1) consult with the person prior to any hearing; (2) be given adequate time to prepare for all hearings; (3) continue to represent the person throughout any proceedings under this charge unless released as counsel by the court; and

(4) be a vigorous advocate on behalf of the client.

**10.** Rule 3 entitled "Provision of Counsel" provides:

Rule 3.01.

The court shall appoint counsel for respondent immediately upon the filing of a petition, and shall assure that representation is available to respondent throughout the proceeding in accordance with these Rules.

The comments to Rule 3.01 (by reference found in the comments to Rule 3.02) indicate that representation and assistance of counsel includes "(7) receiving reports about respondent (patient), and taking appropriate actions in response thereto to advise respondent of and protect his rights"; and "(9) counseling and representing with respect to a petition seeking the court's review or approval of any involuntary administration of treatment or medication, such as a petition filed pursuant to *Price v. Sheppard,* 307 Minn. 250, 239 N.W.2d 905 (1976)."

Rule 4, "Role of Respondent's Counsel" provides in material part:

Rule 4.01.

Respondent's counsel, as in other adversary proceedings, shall advocate vigorously on behalf of respondent.

Rule 4.02.

Counsel shall continue to represent respondent in all proceedings in which respondent has a right to counsel under the M.C.A. or these Rules, unless and until permitted to withdraw by the court.

Rule 4.03.

Counsel shall advise respondent with candor concerning all aspects of the case, including, where possible, his professional opinion as to the probable outcome.

Rule 4.04.

To the extent that respondent does not articulate his desires in any particular aspect of

Additionally, Minn.Stat. § 253B.17, subd. 1 (1988) affords to a patient, such as Schmidt, the right to petition for a hearing at any time concerning the administration of neuroleptic medication.[11]

When one considers Minn.Stat. § 253B.03, subd. 6a, in conjunction with the other procedural protections afforded by the other provisions of chapter 253B discussed above, as well as the provisions of Rules 3 and 4 of the Special Rules of Procedure, it is readily apparent that requisite procedural protections are afforded to assure that a mentally incompetent patient will not be subjected to neuroleptic medication treatment without representation of counsel and a right to a hearing.[12] Therefore, we hold that Minn.Stat. § 253B.03, subd. 6a, which provides a procedure preliminary to authorization by a court for the employment of neuroleptic medication in the treatment of an involuntarily committed mentally ill patient does not facially violate the due process rights of a mentally ill patient.

Accordingly, we affirm the ruling of the trial court.

---

the proceeding, counsel shall take the position which preserves respondent's legal rights, including opposing the petition.
Rule 4.05.
Unless instructed to the contrary by respondent, counsel may present evidence of the existence of alternatives less restrictive than those sought in the petition.

11. Insofar as applicable, Minn.Stat. § 253B.17, subd. 1 provides: " * * * A patient committed as mentally ill or mentally ill and dangerous may petition the committing court or the court to which venue has been transferred for a hear-

ing concerning the administration of neuroleptic medication * * *."

12. Notwithstanding that conclusion, in order to forestall any later claim that, as applied, the statute is unconstitutional because, in fact, a patient's counsel appointed pursuant to chapter 253B was not notified of the petition seeking authority to employ invasive procedures, the director of the appropriate regional treatment center has the duty to afford timely notice to the patient's counsel at the time the petition is filed under section 253B.03, subdivision 6a.