**Gordon CRAWFORD, Appellant,**

v.

**MINNESOTA DEPARTMENT OF HU-MAN SERVICES, Hennepin County Welfare Board, Respondents.**

**No. C4-90-2237.**

Court of Appeals of Minnesota.

April 23, 1991.

Luther A. Granquist, Legal Advocacy for Persons with Developmental Disabilities, Minneapolis, for Gordon Crawford.

Hubert H. Humphrey, III, Atty. Gen., Deborah L. Huskins, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Dept. of Human Services.

Michael Freeman, Hennepin County Atty., Deonne Parker, Asst. County Atty., Minneapolis, for Hennepin County Welfare Bd.

Considered and decided by KALITOWSKI, P.J., and SHORT and POPOVICH,* JJ.

## OPINION

KALITOWSKI, Presiding Judge.

This appeal is from a judgment of the district court affirming a decision by the Commissioner of Human Services which dismissed for lack of jurisdiction appellant Gordon Crawford's administrative appeal brought under Minn.Stat. § 256.045, subd. 4a.

---

* Retired chief justice, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10, and Minn.Stat. § 2.724, subd. 3 (1990).

## FACTS

Appellant Gordon Crawford is a 29–year–old man with mental retardation. Crawford is and has been since 1965 a ward of the Commissioner of Human Services (Commissioner). The Commissioner, as Crawford's public guardian, has delegated her guardianship duties to the Hennepin County Welfare Board pursuant to Minn. Stat. § 252A.111, subd. 5 (1988). Hennepin County also provides case management services for Crawford pursuant to Minn.Stat. § 256B.092, subd. 1 (1988).

Since 1973, Crawford has resided in a group home for persons with mental retardation. As a result of an incident that occurred at the group home on August 31, 1989, the group home decided to demit Crawford. Commitment proceedings were begun with the support of Crawford's Hennepin County case manager.

Crawford contests several actions taken by his case manager both before and after the August 31, 1989, incident. A conciliation conference concerning the case manager's actions was held pursuant to Minn. Stat. § 256.045, subd. 4a. At the conciliation conference and at Crawford's subsequent appeal to the Commissioner, under Minn.Stat. § 256.045, subd. 4a, Crawford claimed that his case manager had failed to protect his rights and that the county agency had failed to assure that guardianship services delegated to Hennepin County by the Commissioner were delivered in accordance with applicable rules. Specifically, Crawford claimed:

(1) that his case manager actively supported his demission from the group home and commitment to a regional treatment center;

(2) that his case manager made no effort to get an advocate or advocates involved to challenge his demission from the group home;

(3) that his case manager in 1987 had supported his prosecution on a criminal charge and released private information to police to that end; and

(4) that his case manager purported also to function as the person exercising delegated public guardianship responsibilities in planning for Crawford and in approving the use of aversive and deprivation procedures, contrary to the rules of the Department of Human Services.

The Commissioner dismissed Crawford's administrative appeal for lack of jurisdiction, and the district court affirmed. This appeal followed.

## ISSUE

Did the Commissioner err as a matter of law by ruling that she lacked jurisdiction under Minn.Stat. § 256.045, subd. 4a to hear and to determine Crawford's appeal?

## ANALYSIS

The scope of review applicable to this appeal is set forth in Minn.Stat. § 14.69 (1988). *See Mammenga v. Minnesota Dep't of Human Servs.*, 442 N.W.2d 786, 789 (Minn.1989); *Brunner v. Minnesota Dep't of Pub. Welfare*, 285 N.W.2d 74, 75 (Minn.1979). The question before us involves the Commissioner's interpretation of Minn.Stat. § 256.045, subd. 4a and, to a lesser extent, her interpretation of other statutes and rules. Specifically, we must determine whether the Commissioner's statutory interpretations are "affected by * * * error of law." Minn.Stat. § 14.69(d).

While we give great weight to the statutory construction of the agency charged with the statute's administration, we are not bound by the agency's interpretation. *Mammenga*, 442 N.W.2d at 792. Since the issue on appeal concerns legal rather than factual considerations, we need not defer to agency expertise, *Frost–Benco Elec. v. Minnesota Pub. Util.*, 358 N.W.2d 639, 642 (Minn.1984), nor need we defer to the district court. *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 822 (Minn.1977).

Minn.Stat. § 256.045, subd. 4a was enacted in 1987 as a condition for settlement of *Welsch v. Gardebring*, 667 F.Supp. 1284, 1287 (D.Minn.1987), a class action in federal court involving persons with mental retardation who lived or had lived in Minnesota's state hospitals. Subdivision 4a provides for an informal conciliation process for recipients of case management services,

pursuant to Minn.Stat. § 256B.092, subds. 1–1b, who contest certain county actions with regard to provision of those services. Prior to enactment of Minn.Stat. § 256.045, subd. 4a, appealable issues under the Department's case management rule were limited to denial of services, failure to act with reasonable promptness, or a suspension, reduction or termination of services. *See* Minn.R. 9525.0135, subpt. 2 (1989). Subdivision 4a authorizes appeal to the Commissioner of two additional types of issues:

[ (1) ] whether case management services have been provided in accordance with applicable laws and rules[;] or

[ (2) ] whether the local agency has assured that the services identified in the recipient's individual service plan have been delivered in accordance with the laws and rules governing the provision of those services.

Minn.Stat. § 256.045, subd. 4a. Crawford contends that the Commissioner has jurisdiction to hear and to determine the issues he raises under both prongs of the appeal provision of subdivision 4a.

A. *First prong of appeal provision of Minn.Stat. § 256.045, subd. 4a.*

■ On its face, the first prong involves the county agency's direct provision of case management services. Case management services for persons with mental retardation:

include diagnosis, an assessment of the individual's service needs, an individual service plan, an individual habilitation plan, and methods for providing, evaluating and monitoring the services identified in the plan.

Minn.Stat. § 256B.092, subd. 1a (1988);[1] *see also* Minn.R. 9525.0015, subpt. 4 (1989) (defining "case management services"); Minn.R. 9525.0025, subpt. 2 (1989) (stating purpose of rules pertaining to case management services for persons with mental retardation). Case management

services are provided by an individual case manager designated by the county board. Minn.R. 9525.0015, subpt. 4; Minn.R. 9525.-0035, subpt. 2 (1989).

At his conciliation conference and subsequent appeal to the Commissioner, Crawford argued that his county case manager failed to protect his rights by actively supporting his demission from the group home; by failing to make efforts to get an advocate involved in challenging his demission; by supporting his prosecution on a criminal charge and relating private information to the police; and by purporting also to act as his guardian in planning and approving the use of aversive and deprivation procedures. Crawford argues that the Commissioner has jurisdiction to hear and to determine issues involving the case manager's responsibility for protection of Crawford's rights. We agree.

The definition of "case management services" in Minn.R. 9525.0015, subpt. 4 includes the following sentence:

Case management services include monitoring and evaluating the delivery of the services to, *and protecting the rights of,* the persons with mental retardation.

*Id.* (emphasis added). Issues involving whether the case manager provided case management services "in accordance with applicable laws and rules" are appealable under the first prong of Minn.Stat. § 256.045, subd. 4a's appeal provision. "[P]rotecting the rights of" persons with mental retardation is, explicitly, part of the definition of case management services under the applicable rule, Minn.R. 9525.0015, subpt. 4. It follows, from the plain language of subdivision 4a, that the Commissioner has jurisdiction to determine what actions were required of the case manager to protect Crawford's rights, whether the case manager fulfilled this responsibility and what relief is appropriate.

■ The Commissioner argues that Crawford's complaints about his case man-

---

**1.** Minn.Stat. § 256B.092, subd. 1a was amended by 1990 Minn.Laws ch. 568, art. 3, § 57 to state:
Case management services *are limited to* diagnosis, assessment of the individual's service needs, development of an individual service

plan, specification of methods for providing services, and the evaluation and monitoring of the services identified in the plan.
Minn.Stat. § 256B.092, subd. 1a (1990) (emphasis added).

ager's actions are actually complaints about how the county acted in its capacity as Crawford's public guardian and that proper jurisdiction therefore lies with the probate division of the district court. The same individual who serves as Crawford's county case manager also purported to act as his guardian at the time the actions Crawford complains of were taken. This "dual role" of Crawford's case manager is contrary to a 1987 legislative directive to the Commissioner. Minnesota Statutes section 252A.21, subdivision 2 (1988) directs the Commissioner to adopt rules implementing chapter 252A, which "must include * * * a requirement that the duties of guardianship * * * and case management not be performed by the same person." Although a rule incorporating this requirement has not yet been promulgated, several existing rules clearly contemplate that case management and guardianship roles are to be exercised by different persons. *See* Minn.R. 9525.0075, subpts. 1, 5, 6 (1989) (individual service plan development); Minn.R. 9525.0085, subpt. 2.F. (1989) (authorization of services); Minn.R. 9525.2710, subpt. 18 (1989) (composition of interdisciplinary team); Minn.R. 9525.2780 (1989) (authorization of use of aversive and deprivation procedures).

■ The Commissioner argues that the case manager was acting in her role as Crawford's guardian when the actions Crawford complains of were taken, and that those actions were within the scope of a guardian's powers. We disagree.

First, on the record before us, we find it impossible to determine which of the two roles the case manager was exercising when she supported Crawford's demission from the group home; neglected to get an advocate involved to challenge his demission; supported criminal prosecution of Crawford and divulged private information to the police; engaged in planning; and approved the use of aversive and deprivation procedures. Second, even if we could determine that the case manager was acting as Crawford's guardian when she took these actions, she at no time abdicated her case management responsibilities to Craw-

ford. The case manager at all times remained subject to the laws and rules governing provision of case management services, and those rules required her to protect Crawford's rights.

B. *Second prong of appeal provision of Minn.Stat. § 256.045, subd. 4a.*

■ Under the second prong of subdivision 4a's appeal provision, the Commissioner has jurisdiction to determine

whether the local agency has assured that the services identified in the recipient's individual service plan have been delivered in accordance with the laws and rules governing the provision of those services.

Minn.Stat. § 256.045, subd. 4a.

One of the case management responsibilities imposed on the county agency is to assess the need for legal representation by a person with mental retardation. *See* Minn.Stat. § 256B.092, subd. 1 (requiring county to conduct "needs assessment"); Minn.R. 9525.0055, subpt. 1.J. (1989) (mandating that "needs assessment" address person's need for "legal representation"); *see also* Minn.R. 9525.0015, subpt. 18 (1989) ("legal representative" in case management rules means, *inter alia*, "a guardian or conservator"). Assessment information about the need for legal representation and other needs is to be used to develop an individual service plan which must identify all service needs and state the actions to be taken to meet them. *See* Minn.R. 9525.0075, subpt. 4.C. & D. (1989).

Public guardianship is a service which was identified as needed in Crawford's individual service plan. That plan states:

Legal Status—Gordon is a State ward. This is appropriate.

Because continued public guardianship services are identified in Crawford's individual service plan, the Commissioner, under the plain language of the second prong of subdivision 4a's appeal provision, has jurisdiction to determine whether the county assured that these services have been delivered in accordance with the laws and rules which govern their provision.

The Commissioner's jurisdiction in dealing with guardianship issues is limited. The focus of the appeal to the Commissioner under the second prong is the county's assurance, through Crawford's case manager, of proper provision of guardianship services, i.e., did the case manager properly arrange for, monitor, and assure the quality of guardianship services provided to Crawford, and did she assure that laws and rules governing provision of guardianship services were followed? *See* Minn.R. 9525.0085, 9525.0115, 9525.0125 (1989).

■ We disagree with the Commissioner's conclusion that because Crawford's appeal includes guardianship issues the entire matter belongs in district court. Here, Hennepin County provides both case management and public guardianship services to Crawford, and the same individual has functioned both as Crawford's case manager and as his guardian. Because of this dual role, the case manager was, in effect, required to monitor herself when she performed guardianship functions to assure that guardianship services were provided in accordance with laws and rules governing their provision.

We conclude that under subdivision 4a, Crawford can challenge the procedures used by the county to assure that guardianship services were provided in accordance with applicable laws and rules, and pursue his complaints that the case manager, in violation of several Department rules, also acted as his guardian. If after reviewing the county's case management actions the Commissioner determines that substantive guardianship issues remain unresolved, the proper forum for a determination of these issues is the probate division of the district court. *See* Minn.Stat. § 252A.19, subd. 2 (1988).

## DECISION

The Commissioner and the district court erred in ruling that the Commissioner lacked jurisdiction to hear and determine Crawford's appeal under Minn.Stat. § 256.045, subd. 4a. We reverse and remand the case to the Commissioner for a determination of (1) whether Crawford's case manager protected his rights in accordance with Minn.R. 9525.0015, subpt. 4; and (2) whether the county agency, in its capacity as provider of case management services, assured that the public guardianship services identified in Crawford's individual service plan were delivered in accordance with the laws and rules governing provision of those services.

Reversed and remanded.