**In re the Matter of Cindy D. VOGT, Petitioner, Appellant,**

v.

**Thomas C. VOGT, Respondent.**

**No. CX–89–924.**

Supreme Court of Minnesota.

May 18, 1990.

Loretta M. Frederick, Winona, Tracy Bains, Janet C. Werness, Southern Minnesota Regional Legal Services, Inc., Albert Lea, for appellant.

J.L. Pegg, Owatonna, for respondent.

Gary Weissman, Family Law Section of Minnesota State Bar Ass'n, Minneapolis, amicus curiae.

SIMONETT, Justice.

This case discusses the manner in which temporary visiting rights should be determined when one spouse is seeking an order for protection in a domestic abuse proceeding.

On January 30, 1989, Cindy Vogt filed a pro se petition with the Steele County District Court for an order for protection pursuant to the Domestic Abuse Act, Minn. Stat. ch. 518B (1988). In the space provided in the petition for her affidavit, petitioner wrote how a few days before her husband, Thomas Vogt, had physically abused her in front of their two small children. An ex parte order of restraint was issued and served on Thomas Vogt.

On February 6, 1989, a court hearing was held on the petition with both parties appearing pro se. Thomas Vogt filed no counter-affidavit. When asked what his position was, Thomas Vogt replied, "I did go and seek professional help to deal with my problem." The court then issued that same day an order restraining Thomas Vogt from harassing his wife and awarding custody of the two children (3 and 6 years old) to Cindy Vogt, "subject to reasonable visitation [sic] in accordance with the plan developed by Steele County Court Services." Thomas Vogt asked when he might visit the children, and, when the parties indicated they then had time available, the court told them to see Mrs. Durst in Court Services. Mrs. Durst met separately with the Vogts. Both then signed a handwritten agreement setting out a temporary visiting schedule, which was then attached to the court's order.

Two days later, on February 8, the parties were back in court, apparently for Thomas Vogt's arraignment on fifth degree assault charges. The husband was represented by counsel and the wife appeared pro se. Thomas Vogt's attorney took the occasion to serve Cindy Vogt with the husband's petition for a marriage dissolution. When the attorney expressed concern about the children, the court responded that Court Services' recommendation on visiting would be followed unless something came up that indicated it should not be. The court then added, "It's not their [the parties'] decision to make, it's up to Court Services."

A few days later Cindy Vogt retained a Legal Aid attorney who wrote a letter to the husband's attorney "revoking" the visiting agreement. On March 13 the parties were back in court on a variety of motions, namely, Cindy Vogt's application for temporary relief in the dissolution proceeding, Cindy Vogt's motion to vacate the February 6 visiting agreement, and Thomas Vogt's motion that his wife be found in contempt of court for failing to abide by

the court's order on visiting. Cindy Vogt filed an affidavit claiming that when she met with Mrs. Durst of Court Services she felt "overpowered and confused"; that Mrs. Durst told her she was being "selfish" and "greedy" and that a written agreement had to be signed that day. No affidavit from Mrs. Durst was filed.

At the hearing on the motions, Cindy Vogt argued that the visiting schedule agreement obtained by Court Services was the product of mediation, which was unauthorized because there was probable cause of physical abuse. The trial court stated that mediation had not been ordered and had not been involved, and ruled that Court Services had been properly used.

The motion to vacate the visiting agreement was denied.[1] So was Thomas Vogt's motion to hold Cindy Vogt in contempt. The domestic abuse proceeding was consolidated with the marriage dissolution proceeding, and an order for temporary relief was issued incorporating the same visiting schedule that was in the Court Services' agreement. On May 11 these orders were reduced to judgment, and from this judgment Cindy Vogt now appeals. In an unpublished opinion, the court of appeals affirmed, concluding that "court services personnel were appropriately used" in fixing the visiting schedule. We granted Cindy Vogt's petition for further review.

In this appeal, only the legality of the procedures used by the court in establishing the visiting schedule in the domestic abuse case is being questioned. Cindy Vogt is not seeking review of the visiting schedule itself, nor is she questioning the manner in which the court set visiting rights in the dissolution proceeding. Later in the dissolution proceedings, interestingly enough, Cindy Vogt proposed a visiting schedule more liberal for Thomas Vogt than was set out in the court services handwritten agreement. Thomas Vogt was subsequently acquitted of the fifth degree assault charges. Two weeks before we granted review here, the Vogts stipulated to a custody and visiting agreement.

Broadly stated, there are two main issues: (1) Is compulsory mediation of visiting rights permissible in a domestic abuse case? and (2) What is the role of Court Services in establishing visiting rights? There is also a threshold question whether these issues are moot on appeal.

## I.

■ The Vogts were told by the trial court they should see Mrs. Durst in Court Services to work out a visiting schedule. Appellant Cindy Vogt chooses to characterize this occurrence as an order for compulsory mediation. She then argues that this mediation was unauthorized, and the ensuing agreement consequently invalid.

The trial court quite correctly pointed out that it had not ordered mediation and that Cindy Vogt was raising a non-issue. Unfortunately, to reinforce its position, the trial court suggested in dicta that the statutes disallow mediation outside dissolution and separation proceedings, and also disallow where only visiting, not custody, is being contested. Appellant Cindy Vogt seeks to challenge this interpretation of the statutes.

Although the Vogts are no longer concerned about visiting rights, amicus (the Family Law Section of the state bar association) argues that the issue of statutory construction is not moot because it raises an issue capable of repetition yet evading review. *See, e.g., Matter of Schmidt,* 443 N.W.2d 824, 826 (Minn.1989). The issue is not, however, capable of repetition. The current session of the legislature has amended the applicable statutes to provide that court-ordered mediation is available in any child custody determination (except, of course, where there is probable cause of domestic abuse), and that a contest over

---

1. In the Court Services agreement the parties agreed that until Court Services had completed its child abuse investigation, the children would visit their father on alternate weekends from Friday evening through Sunday evening, with the children to be taken to the grandparents' home and the visits to take place there. The mother's attorney asked that visits begin Saturday mornings and that they be supervised. In its order denying the motion to vacate, the trial court found that the agreement signed by the parties was "fair, reasonable and workable."

visiting rights is included in a custody determination.[2] The issue is moot.

## II.

■ The second issue raised is whether the trial court properly used Court Services in establishing visiting rights. While moot as to the Vogts, we conclude we should entertain this issue on appeal. Unlike the first issue, the use of Court Services is a question capable of repetition yet unamenable to review. The Domestic Abuse Act authorizes a court to establish "temporary visitation [sic]" as relief in a proceeding for an order for protection. Minn.Stat. § 518B.01, subd. 6(3) (1988). These proceedings occur frequently. The relief provided is transitory, usually for not more than 1 year. Minn.Stat. § 518B.01, subd. 6(8)(b) (1988). The parties, usually pro se, are unfamiliar with extraordinary writs, and the proceedings move quickly. These conditions conspire to insulate issues that may arise from effective review.

What complicates this case is that the record lends itself to different interpretations of what occurred. Appellant argues that the trial court ordered compulsory mediation. Arguably, the parties, at the court's suggestion, voluntarily agreed to use the auspices of Court Services to negotiate a visiting schedule. Arguably, too, the court ordered visiting and directed Court Services to work out the scheduling details.

Plainly, mediation was not used in this case. The trial court never said this was what it was doing; rather, as the court stated at the February 8 hearing, "It's not their [the parties'] decision to make, it's up to Court Services." In its order following this hearing, the court expressly stated it had not used mediation to establish visiting

rights, but that it had asked Court Services to "arrang[e] the details" for the visits. Even if the trial court had thought court-ordered mediation was available in domestic abuse proceedings, it would not have used it here because the court had implicitly found (by issuance of the protective order) probable cause of physical abuse. *See* Minn.Stat. § 518.619, subd. 2 (1988) (court-ordered mediation not available when there is a finding of probable cause of physical or sexual abuse);[3] *accord* Minn.R.Fam.Ct.P. 9.01.

Mediation is "[a] forum in which an impartial person, the mediator, facilitates communication between parties to promote reconciliation, settlement, or understanding among them." Minnesota Supreme Court–Minnesota State Bar Association Task Force on Alternative Dispute Resolution, Final Report, Appendix D (July 1989). "A mediator may not impose his own judgment on the issues for that of the parties." *Id.* Mediation requires a trained neutral. It can be a useful technique, especially in the family law area, to help people help themselves in solving their disagreements. If Cindy Vogt's version of the meeting at Court Services is correct (and it is the only version we have), an agreement was forced upon her, a process clearly at odds with mediation.

As we read the record, the trial court determined Thomas Vogt was entitled to visit his children and then referred the visiting arrangements to Court Services for its recommendation. The trial court may ask Court Services for "an investigation and report concerning custodial arrangements." Minn.Stat. § 518.167, subd. 1 (1988). In this case Court Services went beyond consulting the parties separately and submitting a report. Instead, it over-

---

**2.** *See* Act of May 3, 1990, ch. 574, §§ 6, 11 and 21, 1990 Minn.Laws ——, ——. These amendments appear to be a precipitant reaction to the trial court's language in this case, even though that language was only dicta and even though the court of appeals had questioned its soundness. We were not advised of this pending legislation, either in the briefs or at oral argument.

**3.** Minn.Stat. § 518.619, subd. 2 (1988), has been amended by Act of May 3, 1990, ch. 574, § 21, 1990 Minn.Laws ——, ——, to read:

If the court determines that there is probable cause that one of the parties, or a child of a party, has been physically or sexually abused by the other party, the court shall not require or refer the parties to mediation or any other process that requires parties to meet and confer without counsel, if any, present.

rode the misgivings of one of the spouses and exacted a signed written agreement from the parties. The trial court appears to have initially accepted this agreement not as a recommendation from Court Services requiring the court's independent appraisal and decision, but simply as the consensual agreement of the parties which the court might incorporate in its order without further inquiry.

Trial courts have a difficult task in these domestic abuse cases. The parties are often pro se. The parties may differ sharply in describing events and assigning motives; their positions may be ill-defined and their arguments may lack focus. Yet the issues themselves, such as when and how one party may visit the children, involve the welfare of children and basic parental concerns. The law is expected to provide immediate, temporary relief, yet time for courts to decide a case fairly and thoughtfully is often in short supply.

 Nevertheless, it is the court's job to decide cases, these cases no less than others, and it is important, too, that the court, not some agency, is perceived by the parties as the decision-maker when it decides. The trial court has wide discretion in dealing with these matters. Ordinarily, consideration of any affidavits and some brief questioning of the parties will suffice for issuance of an order for temporary relief; the order is, of course, subject to revision if more information subsequently comes to light. Or Court Services can conduct an abbreviated preliminary investigation, at least interviewing the parties, sorting out their respective positions and making recommendations to aid the court in arriving at its decision. If both parties are represented by counsel, the court's job is made easier. Only when there is no probable cause of domestic abuse may court-ordered mediation be used.

We conclude that the manner in·which the temporary visiting arrangements were established in the protective order was improper for the reasons stated in this opinion. This issue arises within the context of the trial court's order denying Cindy Vogt's motion to vacate the visiting agree-

ment. Accordingly, that order and the judgment entered thereon, though now moot, are reversed. No costs on appeal will be awarded either party.

Reversed.