Mike HOUCK, et al., petitioners, Appellants,

v.

EASTERN CARVER COUNTY SCHOOLS, Chaska, Minnesota, Respondent.

No. A09–1948.

Court of Appeals of Minnesota.

Aug. 17, 2010.

Debra M. Corhouse, Education Minnesota, St. Paul, MN, for appellants.

Patricia A. Maloney, Eric J. Quiring, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; HUDSON, Judge; and MUEHLBERG, Judge.*

**OPINION**

HUDSON, Judge.

Appellants argue that the district court erred by denying a writ of mandamus to

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

compel an Eastern Carver County school-board election on November 3, 2009. Because appellants are not entitled to mandamus relief, we affirm.

## FACTS

On April 23, 2009, the school board of respondent Eastern Carver County Schools adopted a resolution to transition school-board general elections from odd-numbered years to even-numbered years and created a transition plan for that purpose. Discussions to transition school-board elections from odd-numbered to even-numbered years had taken place informally since 1994, when the Minnesota legislature passed a law simplifying the transition process. Specifically, the 1994 legislation provided that school boards are authorized to transition elections from odd-numbered years to even-numbered years so long as the board adopts an "orderly plan for the transition." 1994 Minn. Laws ch. 646, § 26, subd. 1, at 2502.

The school board's decision to transition to even-numbered-year elections was made primarily in response to significant election costs and low voter participation during odd-numbered-year elections. For example, only 206 of 28,397 registered voters in the district (approximately 0.7%) voted in the 2007 school-board election. In addition, election costs during odd-numbered-year elections are borne exclusively by the school district, while the county provides almost all staff and voting machines when school-board elections are concurrent with state general elections.

The Minnesota School Boards Association (MSBA) advised the school board of two options for transitioning to even-numbered-year elections: (1) hold an election in 2009 in which those members elected would serve three-year terms, thereby providing that the first even-numbered-year election would take place in 2012; or (2) extend the terms of current school-board members up for election by one year and hold the next scheduled election in 2010. According to the school district superintendent, the first option would produce no budget savings until year three (2012), while the second option would produce budget savings in the then-current fiscal year (2009). Based on the district's immediate need to realize budget savings, the school board chose the second option and extended terms for one year. The school board followed the procedure described by the MSBA and adopted a resolution for the transition plan after filling out the MSBA sample resolution form. The plan was introduced and initially considered at a meeting on April 9, 2009, and was later adopted at another meeting on April 23, 2009. Of particular significance to this appeal, the plan extended the terms of four elected board members from four to five years and also extended an appointed board member's term by one year.

Appellants are all eligible voters in the Eastern Carver County school district and are primarily comprised of school district employees, former employees, and spouses of current and former employees. On August 17, 2009, appellants petitioned the district court for a writ of mandamus to compel the school board to hold an election on November 3, 2009. The matter was heard on August 24, 2009. On August 27, 2009, the district court issued an order denying the writ. The district court determined that the school board had discretion to transition to even-numbered-year elections and was required only to have an orderly plan for the transition. The district court noted that term extensions for school-board members to accommodate changes in election dates had previously been authorized and that the plan adopted by the board was orderly. No school-

board election was held in 2009. This appeal follows.

## ISSUES

I. Is appellants' claim moot?

II. Did the district court err by denying mandamus relief?

## ANALYSIS

### I

■ Respondent argues that appellants' claim is moot because the November 3, 2009, election date has passed and a writ of mandamus can no longer compel the school district to hold that election.

■ Mootness is considered "a flexible discretionary doctrine, not a mechanical rule that is invoked automatically." *Jasper v. Comm'r of Pub. Safety,* 642 N.W.2d 435, 439 (Minn.2002) (quotation omitted). Only actual controversies will be decided by the court. *In re Schmidt,* 443 N.W.2d 824, 826 (Minn.1989). "If the court is unable to grant effectual relief, the issue raised is deemed to be moot resulting in dismissal of the appeal." *Id.* This court does not issue advisory opinions, nor does it decide cases merely to establish precedent. *Id.*

■ An appeal is not moot, however, if it is capable of repetition yet evades review or if collateral consequences attach to the judgment. *In re McCaskill,* 603 N.W.2d 326, 327 (Minn.1999). An issue may fit this description if "it does not remain a live controversy until the completion of appellate review but due to its nature may reoccur." *Id.* at 328. "However, the mere fact that the issue is capable of repetition, of itself, does not necessarily trigger application of the exception." *Schmidt,* 443 N.W.2d at 826.

■ The United States Supreme Court has determined that the "capable of repetition, yet evading review" exception is " 'limited to the situation where two elements are combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.' " *Kahn v. Griffin,* 701 N.W.2d 815, 821 (Minn.2005) (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975)). "The Supreme Court has stated that the passage of an election before a court renders its decision will not necessarily render an election-related case moot; such cases may be exceptions to the mootness doctrine because they are capable of repetition, yet evading review." *Id.* at 822 (quotation omitted). A case also is not deemed moot "if the case is 'functionally justiciable' and is an important public issue 'of statewide significance that should be decided immediately.' " *Id.* at 821–22 (quoting *State v. Brooks,* 604 N.W.2d 345, 347–48 (Minn. 2000)).

We conclude that this case may be capable of repetition for two reasons. First, two of respondent's school-board members were elected in 2007, which means that their terms were originally set to expire in 2011. Obviously, no election will take place in 2011 under the new even-numbered-year school-board-election system. Second, the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration. Although the school board adopted the transition plan on April 23, 2009, appellants did not petition the district court for a writ of mandamus—or seek any other relief—until August 17, 2009; leaving little time for this matter to be fully litigated prior to the original November 3, 2009 election date. Thus, to some extent, appellants themselves have contributed to their present

predicament. That said, litigation in general, and election disputes in particular, are fraught with inherent uncertainties and potential legitimate delays. Thus, even if appellants had acted more timely in seeking relief, any attempt to force an election to occur on a date certain—here, November 3, 2009—would have been a difficult proposition, irrespective of the merits of their claim. Therefore, we exercise our discretionary power to reach the merits of this claim.

## II

■ The issue before this court is whether the district court erred in denying the specific relief requested—a writ of mandamus. An order on an application for mandamus relief based solely on a legal determination is reviewed de novo. *Breza v. City of Minnetrista,* 725 N.W.2d 106, 110 (Minn.2006).

■ "Mandamus is an extraordinary remedy ... that is available only to compel a duty clearly required by law." *N. States Power Co. v. Minn. Metro. Council,* 684 N.W.2d 485, 491 (Minn.2004) (citation omitted). Mandamus lies only "where there is no other plain, speedy, and adequate remedy available." *In re Welfare of Child of S.L.J.,* 782 N.W.2d 549, 553 (Minn. 2010) (quotation omitted). Mandamus may also compel the exercise of discretion when required by law. *Mendota Golf, LLP v. City of Mendota Heights,* 708 N.W.2d 162, 171 (Minn.2006). But a writ of mandamus "does not control the particular manner in which a duty is to be performed and does not dictate how discretion is to be exercised." *Id.* If the entity has any discretion to perform the duty, a petitioning party must show that the failure to perform was so arbitrary and capricious that it constituted a clear abuse of discretion. *State v. Pero,* 590 N.W.2d 319, 323 (Minn.1999). Furthermore, "man-

damus will not be ordered where it will prove futile or practically unavailing." *State ex rel. Longman v. Kachelmacher,* 255 Minn. 255, 258, 96 N.W.2d 542, 545 (1959).

To obtain mandamus relief in district court, appellants were required to show: (1) that the school board failed to perform an official duty clearly imposed by law; (2) that, as a result of the failure, appellants suffered a public wrong specifically injurious to appellants; and (3) that no other adequate legal remedy exists. *N. States Power Co.,* 684 N.W.2d at 491; Minn.Stat. § 586.02 (2008).

■ Appellants argue that the school board failed to perform its duty to hold an election at the expiration of five of the sitting school-board members' terms. Appellants contend that, because school-board members are limited by statute to four-year terms, a transition plan extending those terms is, by definition, not "orderly." We disagree.

In 1994, the Minnesota legislature modified the requirements for school-board elections. Among other changes, the legislature required that school-board general elections be held on the first Tuesday after the first Monday in November "of either the odd-numbered or the even-numbered year." 1994 Minn. Laws ch. 646, § 18, subd. 1, at 2449; *see also* Minn.Stat. § 205A.04, subd. 1 (2008). The legislature also provided a transition schedule for transitions from odd- to even-numbered years that would take place between 1995 and 1998. *See* 1994 Minn. Laws ch. 646, § 26. The schedule provided for three-year terms to accomplish the transitions through 1998, but it did not mandate any schedule or mode of transition for transitions taking place after 1998. *Id.* Instead, the legislature stated that "[a] political subdivision that later determines to change from an odd-numbered-year elec-

tion to an even-numbered-year election may do so by adoption of a new resolution or ordinance that contains an orderly plan for transition." *Id.*, subd. 1. Thus, the legislature gave political subdivisions discretion over how to accomplish a transition after 1998.

■■■ By statute, the term of office for an elected school board member is four years, commencing on the first Monday in January and continuing until a successor qualifies. Minn.Stat. § 123B.09, subd. 1 (2008). But generally stating the term of office for school-board members does not alone create a requirement that an election be held exactly four years after the previous election, regardless of the circumstances. We note, for example, that school-board-member terms have been extended in the past. Prior to the 1994 amendment to Minn.Stat. § 205A.04, school-board elections were held on the third Tuesday in May, unless the school board passed a resolution providing for a November election. Minn.Stat. § 205A.04, subd. 1 (1992). The 1994 legislature provided that, when a school board changed its general election from May to November, all board-member terms were lengthened to expire on January 1. 1994 Minn. Laws ch. 646, § 18, subd. 1; Minn.Stat. § 205A.04 (1994).

■■■ Furthermore, the school board's authority to transition from odd-numbered to even-numbered years necessarily means that sitting board members will not serve for exactly four years. A sitting board member would have to vary from the four-year term in order to accomplish the transition by serving for one, three, or five years depending on the transition plan adopted. We also observe that a school-board member's term will last until a successor qualifies. Minn.Stat. § 123B.09, subd. 1. Because school boards must vary from the four-year election cycle in order

to transition elections from odd-numbered to even-numbered years, a successor may qualify later, depending on the transition plan adopted.

■■■ In any case, the statute does not provide a *clear* duty to hold elections at the end of every four-year term despite the power to transition from odd-numbered- to even-numbered-year terms. *See Mendota Golf,* 708 N.W.2d at 174 (concluding that the presence of alternative ways to reconcile a conflict indicates the lack of a clear duty to reconcile that conflict in a specific way). Mandamus can only be granted if "the petitioner has shown the existence of a legal right to the act demanded which is so clear and complete as not to admit any reasonable controversy." *Day v. Wright County,* 391 N.W.2d 32, 34 (Minn.App.1986), *review denied* (Minn. Sept. 24, 1986). Nothing in the governing statutes specifically or definitively places a duty on the school board to carry out the election-year transition in a specific way. Nor do they "clearly and positively" provide appellants with a right to demand that an election be carried out every four years despite the school board's authority to transition from odd-numbered- to even-numbered-year elections. *See Child of S.L.J.,* 782 N.W.2d at 553 (requiring that the law "clearly and positively" impose a duty before mandamus will be issued) (quotation omitted). Instead, the school board has discretion over how to transition to even-numbered-year elections as long as the transition plan adopted is "orderly."

■■■ A writ of mandamus may issue to require a public body to exercise its judgment or discharge its function, but it cannot dictate the manner in which a discretionary duty is exercised. *Ziols v. Rice County Bd. of Comm'rs,* 661 N.W.2d 283, 286 (Minn.App.2003). When a body has discretion as to how to perform a certain

duty, the writ petitioner must show that failing to exercise that discretion in a given way was so arbitrary or capricious as to be an abuse of discretion. *Pero*, 590 N.W.2d at 323. Only in "rare cases" will official discretion be viewed as an abuse of discretion. *Mendota Golf*, 708 N.W.2d at 176 (quotation omitted). The school board must have the discretion to vary from a four-year term in order to implement the transition; otherwise no transition could ever occur. The plan adopted here was a very simple way of transitioning to an even-numbered-year election cycle. It was an efficient, economical, and convenient way to effect the change. Appellants have not shown that this exercise of discretion was arbitrary or capricious.

■ Furthermore, appellants are not entitled to relief because alternative remedies were available. Minnesota election law, which applies to school-board elections, allows individuals to file a petition for the correction of "any wrongful act, omission, or error" of "any ... individual charged with any duty concerning an election." Minn.Stat. § 204B.44(d) (2008); *see also* Minn.Stat. § 205A.02 (2008). Upon receipt of the petition, the district court must "immediately set a time for a hearing" and issue its findings and a final order for relief "as soon as possible after the hearing." Minn.Stat. § 204B.44(d). Appellants have not stated why such an action would not have been adequate, es-

pecially since the statute mandates expediency.

Appellants could also have pursued a declaratory-judgment action. Although they claimed in district court that a declaratory judgment would take too long to ensure that the election took place, appellants did not explain why they waited for four months after learning of the transition plan before taking any action at all. A declaratory judgment, if successful, would have obtained the same result for appellants. *See generally* Minn.Stat. §§ 555.01–.16 (2008). Therefore, we conclude that other adequate remedies were available, and the district court properly denied mandamus relief.

## DECISION

Because the law does not clearly and positively require that an election be held every four years, despite the school board's authority to make an orderly transition from odd-numbered- to even-numbered-year elections, and because other adequate remedies were available to appellants, the district court did not err in denying mandamus relief.

**Affirmed.**